Hearing Date and Time: March 30, 2017 at 10:00 a.m.
Objection Deadline: March 13, 2017 at 4:00 p.m.

Nickolas Karavolas, Esq.  (NK2504)
**PHILLIPS LYTLE LLP**
Attorneys for the Trust
340 Madison Avenue, 17th Floor
New York, New York  10173-1922
Telephone: (212) 759-4888
E-mail: NKaravolas@PhillipsLytle.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| GOD'S CHARIOTS TO THE HEAVENLY HIGHWAY, | Case No.: 16-13585 (SMB) |
| Debtor. | |

**MOTION OF THE TAX LIEN TRUST TO DISMISS THE DEBTOR'S CASE OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(D) OF THE BANKRUPTCY CODE**

NYCTL 2015-A Trust (the "**Trust**"), by its undersigned attorneys, Phillips Lytle LLP, files this motion ("**Motion**") for an Order, substantially in the form of the proposed order attached as **Exhibit A**, dismissing the above-captioned bankruptcy case ("**Case**") or, in the alternative, granting the Trust relief from the automatic stay pursuant to section 362(d) of Title 11 of the United States Code ("**Bankruptcy Code**") to foreclose on its lien on certain real estate located at 844 St. Ann's Avenue, Bronx, New York 10456 (the "**Property**").  In support of the Motion, the Trust respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue for this case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicate for the relief requested in the Motion is sections 1112(b) and 362(d) of the Bankruptcy Code.

## BACKGROUND

4. On December 27, 2016 ("**Petition Date**"), God's Chariots to the Heavenly Highway (the "**Debtor**") filed a pro se voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York ("**Court**").

5. As of the date of this Motion, the Debtor has not filed, *inter alia*, any bankruptcy Schedules, a Summary of Assets and Liabilities, a Statement of Financial Affairs, a corporate resolution or a corporate ownership statement.

6. On April 30, 2015, the Debtor filed a pro se voluntary Chapter 11 petition in this Court [Case No. 15-11134(mg)] ("**Prior Case**"). The Debtor did very little to advance its case toward a bankruptcy exit. The Trust ultimately obtained relief from the automatic stay on June 27, 2016 (see order attached as **Exhibit B**), and the case was ultimately dismissed on August 3, 2016.

7. On July 12, 2016, the Trust commenced a state court tax lien foreclosure action ("**Foreclosure Action**") with respect to the Property by filing a summons and complaint in the

Supreme Court of the State of New York, County of Bronx ("**State Court**") [Index No. 24666/2016E]. A copy of the complaint in the Foreclosure Action is attached as **Exhibit C**.

8. On December 2, 2016, the State Court entered an Order of Reference to Compute which, among other things, (i) granted a default judgment in favor of the Trust and against the Debtor; (ii) appointed Mr. Eric A. Wugmalter, Esq. as referee (in such capacity, the "**Referee**"), and (iii) directed the Referee to ascertain and compute the amount due to the Trust for principal, interest and other disbursements advanced. A copy of the Order of Reference to Compute is attached as **Exhibit D**. The Debtor's filing of this Case halted the Foreclosure Action at this stage of the litigation.

9. The Trust holds a tax lien claim against the Property as evidenced by the proof of claim filed in this case on January 26, 2017 (Claim Number 2) ("**Trust Claim**"). A copy of the proof of claim filed by the Trust is attached as **Exhibit E**.

10. As of the Petition Date, the amount of the Trust Claim was $299,036.59. Since the Petition Date, the Trust Claim has been accruing late interest at the statutory interest rate of eighteen percent (18%) per annum in accordance with section 511 of the Bankruptcy Code and sections 11-224.1(e) and 11-319 of the New York City Administrative Code.

11. The Trust Claim is a secured statutory lien against the Property that is entitled to priority over all other liens and encumbrances on the Property pursuant to section 11-301 of the New York City Administrative Code. *See* N.Y.C. Administrative Code § 11-301 ("All taxes and all assessments and all sewer rents, sewer surcharges and water rents, and the interest and charges thereon, which may be laid or may have heretofore been laid, upon any real estate now in the city, shall continue to be, until paid, a lien thereon, and shall be preferred in payment to all other charges.")

**ARGUMENT**

**I.    The Case Should Be Dismissed Pursuant to Section 1112(b)**

12.     The Case should be dismissed pursuant to section 1112(b) of the Bankruptcy Code because: (i) there is a substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; (ii) the Case was filed in bad faith with the sole purpose of averting foreclosure of the Property; and (iii) the Trust is the only significant creditor in the Case, and the Case is essentially a two-party dispute between the Trust and the Debtor.

13.     Section 1112(b) of the Bankruptcy Code provides, in pertinent part, that, unless certain specific exceptions (not applicable here) apply, "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment . . . of a trustee or examiner is in the best interests of creditors and the estate."  11 U.S.C. § 1112(b).

14.     While section 1112(b)(4) contains a list of circumstances that may constitute "cause" for dismissal of a chapter 11 case, such statutory list is merely illustrative, rather than exhaustive.  *C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1311 (2d Cir. 1997) ("*C-TC 9th Ave. P'ship*").

15.     One of the enumerated circumstances that constitutes "cause" to dismiss a chapter 11 case is for "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."  11 U.S.C. § 1112(b)(4)(A).

16.     Since the Petition Date, the Trust Claim has been accruing late interest since the Petition Date at a rate of roughly $5,000 per month.  Thus, any equity in the Property that the

4

Debtor has continues to rapidly erode post-petition and there is no evidence that the Debtor will be able to prevent any further diminution of the estate during this Case.

17. Further, there is no clear path to exiting bankruptcy. This is a pro se case, which is improper under Chapter 11 of the Bankruptcy Code. In any event, a quick internet search of the Debtor's name generates a link to a gofundme.com website operated by Ms. Irma Hernandez, the principal of the Debtor, who has attempted (albeit unsuccessfully) to seek donations to allow the Debtor to operate its business properly. Given the lack of activity during the entirety of the Prior Case and the Debtor's failure to file necessary bankruptcy documents in this Case, it is unclear that a confirmable plan is forthcoming. Accordingly, the Case should be dismissed pursuant to section 1112(b)(4)(A).

18. It is well established that "bad faith may serve as a ground for dismissal of a bankruptcy petition." *C-TC 9th Ave. P'ship*, 113. F.3d at 1313; *In re Island Helicopters, Inc.*, 211 B.R. 453, 461 (Bankr. E.D.N.Y. 1997).

19. A finding of bad faith does not require the movant to show "active malfeasance directed at a given creditor." *In re Syndicom Corp.*, 268 B.R. 26, 49 (Bankr. S.D.N.Y. 2001), citing *In re Nesenkeag, Inc.*, 131 B.R. 246, 247 (Bankr. D. N.H. 1991). In determining whether a bankruptcy petition was filed in bad faith, the court may consider "factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of … creditors to enforce their rights.'" *Id.* citing *In re Island Helicopters, Inc.*, 211 B.R. at 462. As discussed below, those factors are present in this Case.

20. In *C-TC 9th Ave. P'ship*, the Second Circuit set forth the following list of eight factors that should be considered by the Court when determining whether a petition was filed in bad faith:

  a. the debtor has only one asset;

  b. the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

  c. the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

  d. the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

  e. the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

  f. the debtor has little or no cash flow;

  g. the debtor cannot meet current expenses, including the payment of personal property and real estate taxes; and

  h. the debtor has no employees.

*C-TC 9th Ave. P'ship*, 113 F.3d at 1311; *see In re MBM Entm't LLC*, 531 B.R. 363, 408 (Bankr. S.D.N.Y. 2015).

  21.  The Second Circuit further held that when it becomes evident from the date that the bankruptcy petition is filed that the debtor has "no reasonable probability of emerging from the bankruptcy proceedings and no realistic chance of reorganizing, then the chapter 11 petition may be frivolous." *Id.* at 1310. It is also improper for the debtor to file a bankruptcy petition to avoid the consequences of adverse state court decisions while it continues litigating. *Id.*

22.    The only apparent purpose for the Debtor's bankruptcy filing was to stay the Foreclosure Action with the hope of relitigating issues previously decided (adverse to the Debtor's interests) in state court.

23.    In addition, the Debtor is a corporation that filed its voluntary chapter 11 petition pro se, which is improper. *See Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007) (a corporation may appear in federal court only through a licensed attorney). As of the date of this Motion, the Debtor has yet to retain bankruptcy counsel in this Case.[1]

24.    Moreover, applying the *C-TC 9th Ave. P'ship* factors outlined above, the facts and circumstances surrounding the filing of this Case support dismissal for "cause." First, as the Debtor's schedules filed in the Prior Case reflect, the Property is the Debtor's sole asset. *See* **Exhibit F**.[2] The Property is the subject of a pre-petition foreclosure action as a result of unpaid real estate tax arrearages owed by the Debtor to the Trust. Thus, the first and third of the *C-TC 9th Ave. P'ship* factors are satisfied here.

25.    Second, the Debtor's financial condition is essentially a two-party dispute between the Debtor and the Trust which is best resolved in the pending state court foreclosure proceeding. "Numerous courts have found bad faith where a debtor possessing a single asset has no realistic chance for rehabilitation of any ongoing business and files a bankruptcy petition in the hopes of gaining relief from another action that essentially involves the resolution of a two-party dispute." *In re MacInnis*, 235 B.R. 255, 260 (S.D.N.Y. 1998).

26.    According to the Debtor's bankruptcy schedules filed in the Prior Case, the Trust is the only secured creditor in this Case and the only known party (other than the Debtor) with an

---

[1] On February 16, 2017, Mr. Anthony Vassallo filed a notice of appearance as proposed counsel to the Debtor [Dkt. No. 7], however Mr. Vassallo has not yet filed an application to be retained as counsel to the Debtor in this Case.

[2] The only personal property identified by the Debtor is personal property located on the premises itself.

interest in the Property. The Case boils down to a mere two-party dispute between the Debtor and the Trust. Dismissal is appropriate under such circumstances. *See In re Syndicom Corp.*, 268 B.R. 26, 51 (Bankr. S.D.N.Y. 2001) (dismissed case where bankruptcy court was "little more than a new locale for continuing [the] two-party dispute" between the debtor and debtor's landlord); *In re Squires Motel*, 416 B.R. 45, 51 (Bankr. N.D.N.Y. 2009) (dismissed case where bankruptcy case was a "two party dispute that was previously resolved in the State Court foreclosure proceedings"); *In re Island Helicopters, Inc.*, 211 B.R. at 456 (noting that a bankruptcy court will not countenance a "desperate legal stratagem in a two party dispute designed to delay and obstruct" a creditor via the filing of a chapter 11 case); *In re 698 Flushing Realty Corp.*, 335 B.R. 17, 20 (Bankr. E.D.N.Y. 2005) (dismissing chapter 11 case that was essentially a two-party dispute).

27.  Further, not only is the dispute between the Debtor and the Trust one that can be resolved in state court, the dispute was actually being litigated before the Petition Date in such forum. By filing its bankruptcy petition, the Debtor is seeking to relitigate issues that have already been resolved in a non-bankruptcy forum. Chapter 11 was not intended to be used for such a purpose. *See, e.g.*, *In re Conn. Consulting Group, Inc.*, 254 F. App'x 64, 68 (2d Cir. 2007) (upheld dismissal of chapter 11 case on bad faith grounds where debtor used its bankruptcy petition "'not to reorganize, but to relitigate' the question of ownership of the [debtor entities]"). Thus, the fourth *C-TC 9th Ave. P'ship* factor is met.

28.  Third, the filing of the Debtor's bankruptcy petition shortly after the State Court entered a default judgment in the Trust's favor evidences an intent to delay or frustrate the legitimate efforts of the Trust to enforce its state court rights with respect to the Property. This satisfies the fifth *C-TC 9th Ave. P'ship* factor.

8

29.     Fourth, in the Schedules filed by the Debtor in the Prior Case, the Debtor identifies a single unsecured creditor, Reggie Ernais, with a claim of $22,000 that allegedly arose from a loan to the Debtor to pay taxes owed by the Debtor. *See* **Exhibit F**. This claim is seemingly related to the Trust Claim, but, in any event, is dwarfed in amount by the size of the Trust Claim. Therefore, this factor weighs heavily in favor of dismissal of the Case.

30.     Fifth, upon information and belief, the Debtor does not have any employees.[3]

31.     Sixth, according to the Debtor's operating reports filed in the Prior Case, it appears that the Debtor has insufficient cash flow. Attached as **Exhibit G** are copies of the Debtor's last three operating reports filed in the Prior Case (collectively, the "**Operating Reports**"). As reflected in the Operating Reports, the Debtor's income is inconsistent and for the vast majority of the Prior Case, the Debtor was operating at a loss. The source of a large portion of the Debtor's income is "Pledged Contributions" which are inconsistent at best. In fact, for January 2016, the Debtor reported no contribution income. In addition, in the three-month period reflected on the Operating Reports, the Debtor's rental income ranged from $1,560 to $3,450 per month. Significantly, the late interest on the Tax Claims alone is accruing at a rate of roughly $5,000 per month. On a good month, the Debtor's income is barely enough to cover the <u>interest on account of the unpaid real estate taxes</u>. Thus, it is highly unlikely that the Debtor can satisfy its ongoing monthly expenses, including the payment of insurance, personal property and real estate taxes.

32.     Thus, the above factors, when analyzed in their totality, weigh heavily in favor of dismissal of the Case.

---

[3] There is no evidence in any of the Debtor's filings in this Case or the Prior Case that suggests otherwise.

9

## II. Alternatively, the Trust Is Entitled To Relief From The Automatic Stay Pursuant to Section 1112(b)

33.     Should the Court determine that dismissal of the Case is not in the best interest of the creditors, the Trust alternatively seeks relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code because the Trust should be permitted to continue to enforce its rights with respect to the Property in the Foreclosure Action.

34.     Section 362(d)(1) provides that the court shall grant relief from the automatic stay for "cause." 11 U.S.C. § 362(d)(1). "Cause" is neither defined in the Bankruptcy Code nor its legislative history. *Pickering v. M & T Mortg. Corp.*, No. 06 Civ. 2284(SAS), 2006 WL 2404353, at *3 (S.D.N.Y. Aug. 18, 2006); *Lamarche v. Miles*, 416 B.R. 53, 57 (E.D.N.Y. 2009). The burden of proof on a motion to lift the automatic stay shifts from the movant to the debtor once the initial showing of "cause" is established. *In re Arnott*, 512 B.R. 744, 753 (Bankr. S.D.N.Y. 2014)

35.     "Cause" to terminate the automatic stay exists where there is a desire to allow a proceeding outside of bankruptcy court to proceed, such as a state court foreclosure action. *See, e.g.*, *In re La Brada*, 132 B.R. 512, 517 (Bankr. E.D.N.Y. 1991) (terminating the automatic stay to permit a mortgagee to continue a state court foreclosure action).

36.     In the seminal case of *In re Sonnax Industries*, the Second Circuit catalogued a dozen factors to be weighed in deciding whether litigation should be permitted to continue in another forum. 907 F.2d 1280 (2d Cir. 1990). These factors include: (i) whether relief would result in a partial or complete resolution of the issues; (ii) the lack of any connection with or interference with the bankruptcy case; (iii) whether the other proceeding involves the debtor as a fiduciary; (iv) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (v) whether the debtor's insurer has assumed full responsibility for

defending it; (vi) whether the action primarily involves third parties; (vii) whether litigation in another forum would prejudice the interests of other creditors; (viii) whether the judgment claim arising from the other action is subject to equitable subordination; (ix) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (x) the interests of judicial economy and the expeditious and economical resolution of litigation; (xi) whether the parties are ready for trial in the other proceeding; and (xii) impact of the stay on the parties and the balance of harms. *Id.* at 1286. Not every factor will be relevant in every case. *In re Bogdanovich*, 292 F.3d 104, 110 (2d Cir. 2002).

37.     In this Case, consideration of the relevant *Sonnax* factors weigh heavily in favor of terminating the automatic stay for "cause."

38.     First, the sale of the Property in the Foreclosure Action will resolve any and all issues between the Debtor and the Trust. The only known secured creditor of the estate is the Trust. The Property is the Debtor's sole asset. The Foreclosure Action is an *in rem* proceeding which will have the effect of resolving all liens and encumbrances on the Property upon sale.

39.     Second, because the Foreclosure Action is an *in rem* proceeding, there will be no deficiency judgment claim against the Debtor and the Debtor will not have any personal liability. The sale of the Property will not have any economic effect on the bankruptcy estate.

40.     Third, the State Court is a court of general jurisdiction that is well-versed in handling matters such as the Foreclosure Action. Further, the Foreclosure Action is already pending in the State Court. Thus, the State Court is the court best suited to resolve the dispute between the Debtor and the Trust.

41.     Fourth, the continuation of the Foreclosure Action will not prejudice any of the Debtor's creditors because, according to the Debtor, with the exception of Mr. Ernais, such

creditors do not exist. According to the Debtor, Mr. Ernais provided funds in connection with the Debtor's tax debt. As this claim is unsecured and the Foreclosure Action is an *in rem* action against the Property, termination of the automatic stay will not affect Mr. Ernais' unsecured debt at all. In any event, any party asserting any interest in the Property was named as a party to the Foreclosure Action and has received notice of the action.

42. Fifth, the Trust's lien on the Property is a statutory lien pursuant to the New York City Administrative Code. It is not a judicial lien and is not subject to subordination or avoidance in this Case.

43. Sixth, it is in the interest of judicial economy, as well as of the Trust (as the only known secured creditor of the Debtor), that the Foreclosure Action be allowed to proceed. Allowing the Foreclosure Action to continue would result in the most expeditious and economical resolution of the dispute between the Debtor and the Trust.

44. Seventh, the balance of harms weighs heavily in favor of terminating the automatic stay. Any equity in the Property is quickly eroding at a high rate of interest. A quick sale of the Property in the State Court is advantageous for the Debtor as well as the Trust.

45. Therefore, "cause" exists to lift the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code.

46. Finally, given the delay caused by the Debtor's multiple filings, the Trust respectfully requests that any order terminating the automatic stay in effect in this Case be deemed effective upon entry and the 14-day stay of Bankruptcy Rule 4001(a)(3) be deemed waived.

## WAIVER OF MEMORANDUM OF LAW

47. As this Motion does not raise any novel issues of law and the legal authority for the requested relief is set forth herein (or incorporated by reference), the Trust respectfully requests that the Court waive any memorandum of law requirement imposed by the Local Rules of this Court.

## NOTICE

48. Notice of this Motion has been provided to the Debtor, proposed counsel to the Debtor, all known secured creditors with an interest in the Property, all creditors who have filed a proof of claim in this Case, all parties requesting notice and the Office of the United States Trustee. It is respectfully submitted that no further notice is required.

## CONCLUSION

**WHEREFORE**, pursuant to section 362(d) of the Bankruptcy Code, the Trust respectfully requests that the Court issue an Order: (i) dismissing the Case or, in the alternative, granting the Trust relief from the automatic stay so that it may exercise its state court rights and remedies against the Property, and waiving the 14-day stay pursuant to Bankruptcy Rule 4001(a)(3); and (ii) for such other and further relief as the Court may deem just and proper.

Dated: New York, New York
February 24, 2017

PHILLIPS LYTLE LLP

By: /s/ Nickolas Karavolas
Nickolas Karavolas, Esq. (NK0324)
Attorneys for the Trust
340 Madison Avenue, 17th Floor
New York, New York 10173-1922
Telephone: (212) 759-4888
E-mail: NKaravolas@PhillipsLytle.com

Doc #05-482242.1