LAW OFFICE OF ANTHONY M. VASSALLO
305 Fifth Avenue
Brooklyn, NY 11215
Tel. (347) 464-8277
Fax (866) 334-9752
info@amvasslaw.com

*Proposed Counsel to the Debtor*
*and Debtor in possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:

GOD'S CHARIOTS TO THE HEAVENLY                    Case No.: 16-13585 (SMB)
HIGHWAY INC.,                                                            Chapter 11

                                        Debtor.
-------------------------------------------------------X

### DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY CODE SECTION 327(a) AUTHORIZING THE EMPLOYMENT OF LAW OFFICE OF ANTHONY M. VASSALLO AS COUNSEL TO THE DEBTOR

TO:    THE HONORABLE STUART M. BERNSTEIN,
         UNITED STATES BANKRUPTCY JUDGE;

God's Chariots To The Heavenly Highway Inc. (the "*Debtor*"), by its President, Irma Hernandez, respectfully represents:

### BACKGROUND

1.    The Debtor filed a voluntary Chapter 11 petition on December 27, 2016 without the assistance of counsel.

2.    The Debtor is a religious corporation that was formed in early 2014. It holds title to the property known as 844 St. Ann's Avenue in Bronx County (the "*Property*"). The Property has eight commercial units. Four are occupied by the Debtor, and the rest of the Property is now vacant.

3.  The Property is unencumbered by a mortgage. The Debtor's primary financial difficulties have arisen from, among other things, its inability to generate sufficient revenue to meet operating expenses. A contributing factor to this financial situation was the lack of viable commercial tenants for the retail space of the Property.

4.  The Debtor's bankruptcy case was caused by its inability to meet certain tax obligations to the City of New York, which resulted in the commencement of a foreclosure action in July 2016 and appointment of a receiver in December 2016. The Debtor intends to use the reorganization process to sell the Property to a third party.

5.  After interviewing several candidates to be counsel for this matter, the Debtor entered into a retainer agreement with the Law Office of Anthony M. Vassallo ("*AMV Law*") on March 7, 2017, that embodied the terms of an agreement reached on or about February 21, 2017.[1]

## RELIEF REQUESTED

A.  <u>Retention as Bankruptcy Counsel</u>

6.  Subject to the Court's approval, the Debtor seeks to retain AMV Law as its bankruptcy counsel to prosecute and complete its chapter 11 case. Pursuant to 11 U.S.C. § 327(a) of the Bankruptcy Code, the Debtor requests that the Court approve the employment of AMV Law as its attorneys to perform the legal services necessary to consummate its chapter 11 case. Because AMV Law began rendering limited services to the Debtor on or about February 21, 2017, AMV Law requests that the Court authorize its retention as of that date.

---

[1] Originally, the retainer agreement was conditioned upon the Debtor's payment of a $1,500 retainer to AMV Law from the Debtor, and the Court's approval. In anticipation of this Application, the Debtor provided AMV Law with a post-petition $1,500 payment representing that retainer. After discussions with the Office of the United States Trustee, AMV Law refunded the retainer to the Debtor, which I have accepted on behalf of the Debtor. AMV Law has agreed to proceed without payment of any retainer.

7. AMV Law anticipates rendering the following services to the Debtor:

   (a) perform all necessary services as Debtor's counsel that are related to the Debtor's reorganization and the bankruptcy estate;

   (b) assist the Debtor in protecting and preserving estate assets during the pendency of the chapter 11 case, including the prosecution and defense of actions and claims arising from or related to the estate and/or the Debtor's reorganization;

   (c) prepare all documents and pleadings necessary to ensure the proper administration of the Debtor's case; and

   (d) perform all other bankruptcy-related necessary legal services.

8. The Debtor believes AMV Law is qualified to represent its interest and the interests of the estate. Anthony M. Vassallo, the principal of the firm, has more than 20 years of bankruptcy law experience in the public and private sectors.

9. AMV Law has advised the Debtor it is willing to act in this case and render the necessary professional services as attorneys for the Debtor.

10. Based on the Declaration of Anthony M. Vassallo, annexed hereto as Exhibit A (the "*Vassallo Declaration*"), AMV Law does not hold or represent an interest adverse to the Debtor's estate in the matters upon which AMV Law is to be employed, and AMV Law is "disinterested" as the term is defined in the Bankruptcy Code.

11. AMV Law intends to apply to the Court for the allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), and the local rules and orders of the Court.

12. Subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules and the local rules and orders of the Court, the Debtor proposes to pay AMV Law its customary hourly rates as set forth in the Vassallo Declaration and submits that such rates are reasonable.

B.      Terms of Retention

13. Annexed hereto as Exhibit B is a copy of the retainer agreement between the Debtor and AMV Law. The undersigned has met personally with Mr. Vassallo to discuss the terms of his firm's retention for this case including the retention agreement.

14. As set forth in the Vassallo Declaration, AMV Law asserts that the terms of its retention are reasonable under Section 328 and should be approved.

15. AMV Law has successfully prosecuted bankruptcy cases previously and has demonstrated competence in such cases. Finally, if AMV Law were required to disgorge the retainer, it has the financial ability to do so. For these reasons, the Debtor requests that the Court approve the terms of AMV Law's retention as set forth in the annexed retainer agreement.

16. No previous application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests the entry of an order substantially in the form of the prefixed order granting the relief requested herein and such other and further relief as is just.

Dated:    Brooklyn, New York
            April 28, 2017

*/s/Irma Hernandez*
Irma Hernandez, President
God's Chariots To The Heavenly Highway Inc.
850 St. Anns Avenue
Bronx, NY 10456
Tele: (347) 590-8936

4

# Exhibit A

LAW OFFFICE OF ANTHONY M. VASSALLO
305 Fifth Avenue
Brooklyn, NY 11215
Tel. (347) 464-8277
Fax (866) 334-9752
info@amvasslaw.com
*Proposed Counsel to the Debtor*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:

GOD'S CHARIOTS TO THE HEAVENLY          Case No.: 16-13585 (SMB)
HIGHWAY INC.,                           Chapter 11

                     Debtor.
-------------------------------------------------------X

## DECLARATION AND DISCLOSURE STATEMENT OF
## ANTHONY M. VASSALLO, ESQ., IN SUPPORT OF DEBTOR'S
## APPLICATION TO RETAIN LAW OFFICE OF ANTHONY M. VASSALLO

Anthony M. Vassallo, Esq. states as follows:

1. I am an attorney at law admitted to practice in the State of New York, admitted to practice before this Court and a member of the firm Law Office of Anthony M. Vassallo ("*AMV Law*").

2. I am the partner primarily responsible for the Debtor's case. I have been involved in numerous reorganization and consumer bankruptcy cases for more than 20 years and possess the requisite experience and qualifications to serve as Debtor's counsel.

3. AMV Law bills non-bankruptcy clients between $275 and $350 per hour, depending on, among other things, the complexity of the matter. AMV Law has agreed to bill the Debtor at the following rates:

        $300 per hour for Anthony M. Vassallo,
        $250 per hour for associates and attorneys serving as of counsel, and
        $85 per hour for legal assistants.

4. AMV Law shall bill the Debtor the following amounts for disbursements:

> Photocopying charges at five cents a page;
> Long distance calls and faxes at cost; and
> Any costs incurred by third party vendors at AMV Law's cost.

5. The Debtor has consented to the retention of AMV Law under a general retainer under these terms.

6. I know of no reason why AMV Law is not qualified to represent the Debtor in this case. The firm had no prior connection to or contact with the Debtor before it was first consulted regarding the Debtor's financial difficulties in February 2017.

7. AMV Law has no connection to the creditors of the Debtor or their counsel.

8. I was previously employed by the U.S. Bankruptcy Court as a Law Clerk in from September 1996 through June 1998. I have no present connection to the Court or personnel other than in the ordinary course of my practice. In addition, I have no present connections to anyone at the Office of the United States Trustee other than in the ordinary course of my practice.

9. Other than the foregoing, AMV Law neither represents nor has any connection to any creditor or party in interest of the Debtor, other than in the ordinary course of its business.

10. AMV Law received a payment from the Debtor on or about February 21, 2017, for $1,500. After discussions with the Office of the United States Trustee, I returned those funds to the Debtor and will proceed without a retainer for this case.

2

11. My firm has not agreed to share compensation with any other person or entity.

I declare under the penalty of perjury that the foregoing is accurate and correct.

Dated:   May 1, 2017
         Brooklyn, New York

                                                        /s/Anthony M. Vassallo
                                                        Anthony M. Vassallo

# Exhibit B

# LAW OFFICE OF
# ANTHONY M. VASSALLO[2]

305 Fifth Avenue | Suite 1B
Brooklyn, NY 11215

tony@amvasslaw.com
www.amvasslaw.com
Tele. (917) 862-1936

February 21, 2017

**VIA ELECTRONIC MAIL**

God's Chariots To The Heavenly Highway, Inc.
850 St. Ann's Avenue
Bronx, NY 10467
Attn: Irma Hernandez, President

Re:    <u>Attorney-Client Engagement Letter – Chapter 11 case</u>

Dear Ms. Hernandez:

Thank you for asking the Law Office of Anthony M. Vassallo the "<u>Firm</u>") to represent God's Chariots To The Heavenly Highway, Inc. ("<u>GCHH</u>") in its chapter 11 bankruptcy case.

This letter confirms the discussions concerning the scope, terms, and conditions of the Firm's engagement by GCHH in connection with its bankruptcy case including the potential sale of its real property to a 3rd party (the "Engagement Matters").

1.    *Limited Scope of Engagement and Client Relationship.*

The Firm and GCHH have agreed that any new or expanded engagement beyond that described here will require our mutual agreement. Similarly, except as expressly set forth in this letter, any representation in this engagement of any person or entity other than GCHH will require our agreement. That is, the Firm's client is, and the Firm is entering into an attorney-client relationship only with, GCHH.

2.    *Staffing.*

You have designated yourself as the person from whom we will take direction and to whom we will report in connection with this engagement. I will have primary responsibility for this engagement and will be assisted by such other lawyers and service personnel as appropriate from time to time to provide high quality services in a cost-efficient manner. I will be the Partner generally responsible for the Firm's representation of GCHH in restructuring matters, including matters related to billing and staffing.

3.    *Potentially Adverse Representations or Conflicts of Interest; Advance Waiver.*

---

[2] This Firm is a Debt Relief Agency that helps people file for bankruptcy relief under the Bankruptcy Code.

As is typical for any law firm, the Firm represents and in the future will represent other clients. Some may be direct competitors of GCHH, or otherwise may have, or develop, business interests that are contrary to the interests of GCHH. It is also possible that, during the time the Firm is working for GCHH, an existing or future client of the Firm may seek to engage it in connection with an actual or potential transaction or pending or potential litigation or other dispute resolution proceeding in which such client's interests are or potentially may become adverse to the Firm's interests. Given the size and nature of the Firm's business, this is highly unlikely but bears stating here.

The Firm cannot enter into this engagement if it could interfere with its ability to represent existing or future clients who have, or develop, relationships or interests adverse to GCHH. The Firm therefore asks GCHH, by signing below, to acknowledge that the Firm may continue to represent, or may undertake in the future to represent, any existing or future client in any matter (including but not limited to transactions, litigation or other dispute resolutions), even if the interests of that client in that other matter are directly adverse to GCHH, as long as that other matter is not substantially related to the Engagement Matters. As of the date of this agreement, the Firm is unaware of any such relationships.

By executing this letter, you acknowledge and agree that (1) this engagement will not be asserted by GCHH either as a conflict of interest with respect to, or as a basis to preclude, challenge, or otherwise disqualify GCHH from, any current or future representation of any client in any matter, including, without limitation, any representations in negotiations, transactions, counseling, or litigation adverse to GCHH, as long as that other matter is not substantially related to the Engagement Matters; (2) you hereby waive any conflict of interest that exists or might be asserted to exist and any other basis that might be asserted to preclude, challenge, or otherwise disqualify the Firm in any representation of any other client with respect to any such matter; (3) you have been advised by the Firm, and have had the opportunity to consult with other counsel with respect to the terms and conditions of these provisions and this prospective waiver; (4) your consent to these provisions is both voluntary and fully informed; and (5) you intend for this consent to be effective and fully enforceable, and to be relied upon by the Firm.

4.   *Compensation and Disbursements.*

The Firm's fees are generally determined by the time devoted by each lawyer or other service provider involved in the engagement and the hourly billing rates assigned to each such person. The Firm's hourly rates are revised periodically and the Firm reserves the right to revise them from time to time during its representation of GCHH.[3]

The Firm will bill GCHH for fees incurred at its regular hourly rates and in increments of an hour as required by the procedures adopted by the Bankruptcy Court governing requests for compensation. The Firm typically renders its statements on a monthly basis. The statements are due and payable after approval by the Bankruptcy Court for as long as GCHH is still under the court's jurisdiction. If GCHH is no longer in

---

[3] The Firm's current hourly rates are: Anthony M. Vassallo, $300/hour; other counsel, $250/hour; paralegals, $75/hour. Presently, the Firm anticipates that Mr. Vassallo will provide substantially all of the legal services. The Firm will use a paralegal whenever prudent to reduce the overall fees to GCHH.

2

bankruptcy, the Firm's statements will be due and payable upon receipt. In situations involving extraordinary risks, efforts or results, the Firm may request that GCHH consider a supplemental fee over and above its hourly rates, subject to approval by the Bankruptcy Court.

Based on the current status of this case, the Firm has not received a retainer from GCHH or a third party.

In addition to payment of fees, the Firm expects its clients to defray certain costs and expenses incurred during the Firm's representation of them. A description of those Disbursements and Charges Billing Policies is available upon request. Please note that although charges for non-cash costs incurred by the Firm reflect a good faith estimate of actual, fully absorbed, out-of-pocket costs, those estimates may differ from the actual costs. Normally, disbursements and charges will be subject to reimbursement from the Firm in the regular billing cycle. In some circumstances, however, such as in the case of particularly large items, the Firm may ask GCHH to pay those items directly or in advance.

The Firm also wants to notify you of your right, under Part 13 7 of the Rules of the Chief Administrator of the Courts in New York, to arbitration of fee disputes as provided in that rule, a copy of which will be provided to you at your request.

5.   *Bankruptcy Cases.*

As you have been advised, the Firm's employment by GCHH will be subject to the approval of the bankruptcy court with jurisdiction over the petition, the United States Bankruptcy Court for the Southern District of New York. If necessary, the Firm will modify the terms and conditions of this agreement and the scope of its employment as may be required to comply with the applicable requirements of the bankruptcy process, including any orders of the bankruptcy court.

In response to GCHH's chapter 11 filing, the Firm will prepare a conflict of interest disclosure required in connection with the Firm's retention as bankruptcy counsel. The Firm will promptly initiate the process of reviewing conflict checks on potentially interested parties in key categories, as and when provided to us by GCHH, including (a) GCHH's directors and officers and their respective business affiliations, (b) GCHH's largest unsecured creditors, (c) GCHH's material trade creditors and lessors, (d) parties to significant litigation with GCHH, and (e) GCHH's material secured lenders.

A copy of the current list of entities that will be checked in our conflict system (the "Interested Party List') will be created based upon information that GCHH provides. The Firm also will compile a preliminary draft of a schedule describing the Firm's relationships with certain of the entities identified on the Interested Party List (the "Disclosure Schedule"). The Firm will provide you with a draft of the Disclosure Schedule after it is available. Although I believe that these relationships likely will not constitute conflicts of interest, these relationships must be described and disclosed in GCHH's application to the bankruptcy court to retain the Firm as counsel.

If actual conflicts of interest arise with respect to any of the parties identified on the Disclosure Schedule, the following procedures will be utilized: (a) the Firm may determine that it is unable to represent GCHH in matters adverse to those parties; and

3

(b) if the Firm makes such a determination, GCHH will be required to use separate counsel in those matters, and the Firm will not participate in those matters.

Please note that the Disclosure Schedule will be updated as new information becomes available until the application for the Firm's retention is filed; thereafter, the Disclosure Schedule will continue to be supplemented on a periodic basis throughout the course of the Bankruptcy Cases.

6.   *Disclaimer of Guarantee; Acknowledgement of Potential Risks.*

GCHH understands that the current bankruptcy law, which took effect October 17, 2005, is subject to different interpretations and that there are inherent risks in how Judges and Courts will interpret the law and apply its provisions to GCHH's case.

Nothing in this agreement and nothing in the Firm's statements to GCHH will be construed as a promise or guarantee about the outcome of GCHH's matter. The Firm makes no such promises or guarantees. Specifically, GCHH understands and agrees that the Firm's comments about the outcome of GCHH's matter are expressions of opinion only. Attorney renders no advice or opinion as to issues involving tax debt and has not provided such advice to GCHH.

7.   *Procedures upon Termination; Return of Documents; Intellectual Property.*

Unless previously terminated, the Firm's representation of GCHH will terminate upon sending GCHH a final statement for services rendered in this matter. In that case, or otherwise at GCHH's request, any papers and property sent by you to us will be returned to you. The Firm's own files pertaining to the matter, including lawyer work product and administrative records, as well as document copies, will be retained by the Firm in accordance with its document retention policy. Subject to the Firm's obligations under the applicable bar requirements, the Firm reserves the right to destroy or otherwise dispose of any documents or other materials, including electronic versions, retained by us after the termination of the engagement.

All intellectual property and other know-how developed by the Firm in connection with this engagement, including subject matter expertise, whether or not preserved in written or electronic form, may be retained by us and used in connection with engagements on behalf of other clients, so long as no confidential information relating to the Engagement Matters is thereby disclosed. Further, you hereby consent to the use of your name, GCHH, by the Firm in future firm promotional materials, which may contain factual synopses of your matters, and may indicate generally the results achieved.

8.   *Governing Law.*

The laws of the State of New York, without regard to conflict of law rules, shall govern the interpretation of this agreement.

9.   *Miscellaneous.*

This letter agreement sets forth our entire agreement for rendering professional services. It can be amended or modified only in writing and not orally or by course of conduct. Each party signing below is jointly and severally responsible for all obligations

4

due us and represents that each has full authority to execute this letter agreement so that it is binding. This letter agreement may be signed in one or more counterparts and binds each party countersigning below, whether any other proposed signatory ever executes it.

If any provision of this letter agreement or the application thereof is held invalid or unenforceable, the invalidity or unenforceability shall not affect other provisions or applications of this letter agreement which can be given effect without such provisions or application, and to this end the provisions of this letter agreement are declared to be severable.

Please sign and return to me a copy of this letter to confirm that it accurately reflects the scope, terms, and conditions with respect to this engagement. If you would like to discuss any of these matters, please call me.

Very truly yours,


Signature:    /s/Anthony M. Vassallo
              Anthony M. Vassallo, for the Firm

Dated:  February 21, 2017

ACKNOWLEDGEMENT
On behalf of GCHH, the undersigned confirms that this letter accurately reflects the scope, terms, and conditions with respect to this engagement and that the undersigned's execution and delivery of this confirmation on behalf of GCHH bas been duly authorized by GCHH.


Signature:    /s/Irma Hernandez
Print Name:   Irma Hernandez
Title:        President

Dated:  February 21, 2017

5

# Proposed Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:

GOD'S CHARIOTS TO THE HEAVENLY　　　　　　Case No.: 16-13585 (SMB)
HIGHWAY INC.,　　　　　　　　　　　　　　　　　Chapter 11

　　　　　　　　　　Debtor.
--------------------------------------------------------X

## ORDER PURSUANT TO SECTION 327 (a) OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT OF THE LAW OFFICE OF ANTHONY M. VASSALLO AS COUNSEL FOR THE DEBTOR

Upon the application (the "*Application*") of God's Chariots to the Heavenly Highway (the "*Debtor*"), as debtor and debtor in possession, dated April 28, 2017, for entry of an order pursuant to 11 U.S.C. § 327(a) authorizing and approving the employment of Law Office of Anthony M. Vassallo ("*AMV Law*") as its attorneys under a general retainer; upon the Declaration of Anthony M. Vassallo, Esq. (the "*Declaration*"), a member of the firm of AMV Law; it appearing that Anthony M. Vassallo is admitted to practice before this Court; the Court being satisfied that AMV Law represents no interest adverse to the Debtor and its estate as to the matters upon which it is to be engaged, is disinterested under 11 U.S.C. § 101(14), and that the employment of AMV Law is necessary and in the best interest of the Debtor and its estate; due notice of the Application having been given to the United States Trustee, and it appearing that no other or further notice need be given; sufficient cause appearing therefore, it is

　　　　ORDERED, that the Application is granted in all respects; and it is further

　　　　ORDERED, that pursuant to 11 U.S.C. § 327(a) of the Bankruptcy Code, the Debtor is authorized to employ AMV Law as its attorneys under the terms and conditions set forth in the Application and retainer agreement; and it is further

2

ORDERED, that prior to any increases in AMV Law's current rates, as set forth in paragraph 3 of the Declaration, for any individual retained byAMV Law and providing services in these cases, AMV Law shall file a supplemental affidavit with the Court and provide ten (10) business days' notice to the Debtors, the United States Trustee and any official committee. The supplemental affidavit shall explain the basis for the requested rate increases in accordance with Section 330(a)(3)(F) of the Bankruptcy Code and state whether the Debtor has consented to the rate increase. The United States Trustee retains all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code, and thise Court retains the right to review any rate increase pursuant to Section 330 of the Bankruptcy Code.

Dated:   New York, New York
        May _____, 2017

                                      STUART M. BERNSTEIN
                                      U.S. BANKRUPTCY JUDGE

NO OBJECTION:

_____
Office of the United States Trustee