LAW OFFICE OF ANTHONY M. VASSALLO                    **Hearing Date & Time**
305 Fifth Avenue | Suite 1B                                          **July 18, 2017 at 10:00 a.m.**
Brooklyn, NY 11215                                                   **Objection Deadline**
Tel. (347) 464-8277                                                   **July 11, 2017 at 4:30 p.m.**
Fax (866) 334-9752
info@amvasslaw.com

*Proposed Counsel to the Debtor*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
In re:

GOD'S CHARIOTS TO THE HEAVENLY                    Case No.: 16-13585 (SMB)
HIGHWAY INC.,                                                        Chapter 11

       Debtor.
-----------------------------------------------------X

## DEBTOR'S MOTION PURSUANT TO SECTIONS 363(b) AND 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6004 FOR AN ORDER AUTHORIZING THE SALE OF CERTAIN SELL COMMERCIAL REAL PROPERTY LOCATED AT 844-862 ST. ANNS AVENUE, BRONX, NY 10456 TO LAGREE BAPTIST CHURCH, OR SUCH ENTITY WHICH MAKES A HIGHER AND BETTER BID, PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; AND (II) GRANTING RELATED RELIEF

**TO: THE HONORABLE STUART M. BERNSTEIN
   UNITED STATES BANKRUPTCY JUDGE**

   God's Chariots to the Heavenly Highway, Inc. (the "*Debtor*"), the debtor and debtor-in-

possession herein, hereby moves this Court (the "*Motion*") for the entry of an order, pursuant to

11 U.S.C. §§ 363(b)(1) and (f) and § 105(a) of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*,

Rule 6004 of the Federal Rules of Bankruptcy Procedure, and pursuant to the amended

guidelines for the conduct of asset sales adopted by General Order M-383, authorizing the sale of

commercial real property located at 844-862 St Anns Avenue, Bronx, NY 10456, free and clear

of all liens, claims, encumbrances and interests. In support of the Motion, the Debtor respectfully states as follows:

## PRELIMINARY STATEMENT

1.     By this Motion, the Debtor seeks to sell commercial real property located at 844-862 St Anns Avenue, Bronx, NY 10456 (the "*Property*")[1] for a purchase price of $4,000,000. The Property constitutes substantially of the Debtor's assets. The Debtor, through its broker, Chattel Real Estate, has spent a significant amount of time and effort marketing the Property and negotiating the sale contemplated herein. The Debtor submits that all negotiations were at arm's length, were fair and reasonable, and the fruit of such negotiations will inure to the benefit of the Debtor's bankruptcy estate including the payment of all of the Debtor's creditors in full. The proposed sale, once approved by this Court and later consummated by the parties, will enable the Debtor to monetize its asset and provide funds to pay its creditors in full, including its secured creditor. The Debtor respectfully requests that this Court approve the relief requested herein.

## JURISDICTION

2.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding is proper in this district and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.     The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a) and 363 and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

---

[1]  The Debtor submits that any furnishings included in the sale are *de minimis* in value, and there would be no benefit selling such furnishings by separate sale.

Rules"). The Debtor also relies upon the amended guidelines adopted pursuant to General Order M-383.

## GENERAL BACKGROUND

4.      The Debtor filed a voluntary Chapter 11 petition on December 27, 2016 (the "*Petition Date*") without the assistance of counsel. Pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to operate as a debtor-in-possession. No trustee has been appointed.

5.      The Debtor was authorized to retain the Law Office of Anthony M. Vassallo as bankruptcy counsel. Entry of the order is pending as of the date of this Motion.

6.      No committee of creditors has been appointed by the Office of the United States Trustee.

7.      The Debtor is a religious corporation that was formed in early 2014 in the State of New York. As a not-for-profit corporation, the assets, and/or income are not distributable to, and do not inure to, the benefit of its members or officers. The Debtor primarily depends upon grants and donations to fund its operating expenses.

8.      The Debtor holds title to the Property located at 844-862 St. Ann's Avenue in Bronx County. The Property has eight commercial units. Four are occupied by the Debtor, and the remaining units are now vacant.

9.      The Property is unencumbered by a mortgage. The Debtor's primary financial difficulties have arisen from, among other things, its inability to generate sufficient revenue to meet operating expenses. A contributing factor to this financial situation was the lack of viable commercial tenants for the retail space of the Property.

10.    The Debtor's bankruptcy case was caused by its inability to meet certain tax obligations to the City of New York, which resulted in the commencement of a foreclosure action in July 2016 and appointment of a receiver in December 2016.

11.    The cause for the filing of these cases has been detailed in the affidavit pursuant to Local Bankruptcy Rule 1007-2 filed with the original petition, and is referred to as if fully set forth herein. In short, the Debtor's case was filed to avoid the loss of the Property, its only asset of value in foreclosure due to obligations owed to the City of New York.

## RELEVANT BACKGROUND

12.    The Debtor owns the Property at 844-862 St Anns Avenue for several years. Originally, the Debtor had tenants in several of the commercial spaces but in anticipation of selling the Property, the Debtor decided not to enter into any new leases as each tenant left. The commercial spaces have been vacant since prior to the Petition Date. To the best of the Debtor's knowledge, the Property is encumbered by one lien, held by for NYCTL 2015-A Trust and The Bank of New York Mellon, as Collateral Agent and Custodian.

A.    Chattel Real Estate Broker Retention

13.    On June 1, 2017, the Debtor filed an application (the "*Chattel Application*") to retain Chattel Real Estate ("*Chattel*") as its exclusive real estate broker with respect to the marketing and sale of the Property (Docket No. 195). Chattel's retention is pending. As set forth in the Chattel Application, Chattel's commission for the sale of the Property is three (3%) of the gross purchase price for the Property.

14.    Over the course of the last nine months, Chattel extensively marketed the Property for sale. Ultimately, Chattel showed the Property on at least 5 separate occasions to parties who expressed an interest in purchasing the Property.

15.     Thanks to Chattel's efforts, the Debtor was able to enter into a sale agreement (the "*Purchase Agreement*") with LaGree Baptist Church (the "*Buyer*") to sell the Property for a purchase price of $4,000,000 (the "*Purchase Price*"). A copy of the Purchase Agreement is attached hereto as Exhibit "A." Based on the Debtor's own investigation, the Purchase Price is consistent with "comparables" for the area and is fair and reasonable.

B.    Summary of Purchase Agreement

16.     The salient terms of the Purchase Agreement are as follows: Purchase Price: $4,000,0000. Assets to be Sold: (i) real estate commonly known as 844-862 St Anns Avenue, Bronx, NY 10456 (approximate lot size of 10,699 square feet); and (ii) *de minimis* furnishings, if any. The Purchase Agreement contains a notation that the sale is subject to approval by this Court.

## RELIEF REQUESTED

17.     By this Motion, the Debtor requests entry of an order, pursuant to Bankruptcy Code §§ 105(a) and 363, Bankruptcy Rule 6004 of the Federal Rules of Bankruptcy Procedure, and the amended guidelines for the conduct of asset sales adopted by General Order M-383, approving the Purchase Agreement and authorizing the sale of the Property to the Buyers free and clear of all liens, claims, encumbrances and interests, if any.

## BASES FOR REQUESTED RELIEF

A.     The Sale is Within the Debtor's Sound Business Judgment

18.     Bankruptcy Code § 363(b)(1) provides: "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides in relevant part:

"[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

19.    A debtor should be authorized to sell assets out of the ordinary course of business pursuant to Bankruptcy Code § 363 and prior to obtaining a confirmed plan or reorganization if it demonstrates a sound business purpose for doing so. *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *see also Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991) (stating that "sound business purpose test" is appropriate); *In re Del. & Hudson Ry. Co.,* 124 B.R. 169, 177 (D. Del. 1991) (sale of substantially all of debtor's assets outside of reorganization plan is appropriate when sound business reason justifies such sale).

20.    Courts have applied four factors in determining whether a sound business justification exists: (i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and reasonable consideration is provided; (iii) whether the transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice is provided. *See Lionel*, 722 F.2d at 1071 (setting forth "sound business" purpose test); see also Del. & Hudson Ry., 124 B.R. at 175 (adopting Lionel factors in determining whether sound business purpose exists for sale outside ordinary course of business); *cf. In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147-49 (3d Cir. 1986) (implicitly adopting articulated business justification test of Lionel and adding "good faith" requirement).

21.    Here, each of the four factors has been satisfied. First, the Property is currently vacant and selling the Property is certainly justified. Indeed, selling the Property now permits the Debtor to (i) monetize this asset for the benefit of its creditors and (ii) avoid having

to pay further carrying costs associated with upkeep of the Property, which is no longer being utilized.

22.     As for the second factor, as discussed supra, the Property has been thoroughly marketed and the Purchase Price of $4,000,000 is fair and consistent with an appraisal the Debtor has obtained. Chattel ultimately showed the Property on 5 separate occasions. As a result of Chattel's efforts, the Debtor was able to enter into the Purchase Agreement with the Buyer to sell the Property.

23.     Given the (i) thorough marketing of the Property over the course of the past nine months by a reputable local real estate broker, (ii) the offer received from the Buyer, (iii) the fact that the Purchase Price comports with other "comparables" in the area, and (iv) the lack of a higher offer, the Debtor believes that the second factor has been met.

24.     As to the third factor, the Debtor and the Buyer are proceeding in good faith. Indeed, the Buyer is not an insider of the Debtor and the transaction was negotiated in good faith and at arm's length.

25.     With respect to the last factor, the Debtor will provide adequate and reasonable notice of the proposed sale of the Property by the Notice of Sale annexed hereto as Exhibit "B" (the "*Sale Notice*") to all creditors in the Debtor's bankruptcy case as well as other interested parties in this case including parties that viewed the Property.[2] The Sale Notice will contain information regarding the Property, salient sale terms and hearing date for approval of same. The Debtor submits that such notice is sufficient. *See, e.g., Folger Adam Sec. Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 265 (3d Cir. 2000) (stating that notice is sufficient if it

---

[2] Throughout this case, the Debtor has kept the primary creditor of the Debtor, NYCTL 2015-A Trust, abreast of the sale process. The Trust has not objected to the Debtor's intent to sell the Property.

includes "the terms and conditions of any private sale, states the time for filing objections and, if

real estate is being sold, provides a general description of the property"); *In re WBQ P'ship*, 189

B.R. 97, 103 (Bankr. E.D. Va. 1995) ("notice is sufficient if it includes the terms and conditions

of the sale, if it states the time for filing objections, and if the estate is selling real estate, it

generally describes the property") (quoting *In re Karpe*, 84 B.R. 926, 929 (Bankr. M.D. Pa.

1988)). Finally, the Debtor does note that the proposed sale will constitute a sale of substantially

all of the Debtor's assets.

26.     Under these circumstances, therefore, sound business reasons exist that

justify the private sale of the Property outside the ordinary course of business and prior to the

confirmation of a reorganization plan. Accordingly, this Court should approve the sale.

27.     Under Bankruptcy Code § 363(f), a debtor-in-possession may sell property

free and clear of any interest in such property of an entity other than the estate only if, among

other things: (1) applicable nonbankruptcy law permits sale of such property free and clear of

such interest; (2) such entity consents; (3) such interest is a lien and the price at which such

property is to be sold is greater than the aggregate value of all liens on such property; (4) such

interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable

proceeding, to accept a money satisfaction of such interest. 11. U.S.C. § 363(f). Because

Bankruptcy Code § 363(f) is drafted in the disjunctive, satisfaction of anyone of its five

requirements will suffice to approve the sale of the Property "free and clear" of liens, claims,

encumbrances and interests (collectively, the "Encumbrances"). See 11 U.S.C. § 363(f); *Mich.

Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.),* 930 F.2d 1132,

1147 n.24 (6th Cir. 1991) (recognizing that Bankruptcy Code § 363(f) is written in disjunctive,

and holding that court may approve sale "free and clear" provided that at least one subsection of

§ 363(f) is met), cert. dismissed, 503 U.S. 978 (1992); *Citicom Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same).

28.     To the extent that any liens exist on the Property, the Debtor is confident that it will obtain any necessary consent on or before the hearing on this Motion, thereby satisfying Bankruptcy Code § 363(f)(2). Additionally, the Debtor is confident that the proceeds from the sale of the Property will exceed the value of any lien on the Property, thereby satisfying Bankruptcy Code § 363(f)(3).

B.    Waiver of the Stay Under Bankruptcy Rule 6004(h)

29.     Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). The Debtor requests that any order approving the sale of the Property be effective immediately by providing that the stay under Bankruptcy Rule 6004(h) is waived. The waiver of the stay is imperative as the Buyer would like to proceed with the closing on the sale of the Property as soon as reasonably possible.

**NO PRIOR REQUEST**

30.     No previous request for the relief sought herein has been made to this or any other Court.

**NOTICE**

31.     The Debtor proposes to serve a copy of the Motion and all exhibits by first class mail upon: (i) the Office of the United States Trustee for the Southern District of New York; (ii) counsel for NYCTL 2015-A Trust; (iii) the Buyer's counsel; (iv) the Office of the New York State Attorney General; (iv) all entities who either viewed the Property or expressed an

interest in the Property; and (v) all entities who have filed a notice of appearance and request for service of papers in the Debtor's case.

32.    Additionally, the Debtor proposes to serve a copy of the Sale Notice by first class mail upon: (i) all federal, state and local regulatory or taxing authorities or recording offices that are reasonably known by the Debtor to have an interest in the relief requested by the Motion; (ii) the Internal Revenue Service; (iii) the United States Attorney's office; and (iv) all other known creditors of the Debtor.

33.    The Debtor requests that the Court find that notice in this manner is sufficient and that no further notice is required.

**WHEREFORE**, the Debtor respectfully requests that this Court (i) enter an order, in substantially the form attached hereto as Exhibit "C," approving the sale of the Property to the Buyer and (ii) grant such other and further relief as is just and proper.

Dated: New York, New York
       June 16, 2017

**LAW OFFICE OF ANTHONY M. VASSALLO**
Attorney for God's Chariot to the Heavenly
Highway, Debtor and Debtor-in-Possession

By: /s/ Anthony M. Vassallo
    Anthony M. Vassallo
    305 Fifth Avenue, Suite 1B
    Brooklyn, NY 11215
    (347) 464-8277

# EXHIBIT A

154 Contract of sale for New York office, commercial and multi-family
residential premises.  2-95

Prepared by the Real Property Committee of the Association of the Bar of the City of New York

*NOTE:  This form is intended to cover matters common to most transactions.  Provisions should be added, altered or deleted to
suit the circumstances of a particular transaction.*

## Contract of Sale - Office, Commercial and Multi-Family Residential Premises

### Table of Contents

| | | | |
|---|---|---|---|
| Section 1. | Sale of premises and acceptable title | Section 13. | Objections to title, failure of seller or purchaser to perform and vendee's lien |
| Section 2. | Purchase price, acceptable funds, existing mortgages, purchase money mortgage, escrow of downpayment and foreign persons | Section 14. | Broker |
| | | Section 15. | Notices |
| Section 3. | The closing | Section 16. | Limitations on survival of representations, warranties, covenants and other obligations |
| Section 4. | Representations and warranties of seller | | |
| Section 5. | Acknowledgments of purchaser | Section 17. | Gains tax and miscellaneous provisions |
| Section 6. | Seller's obligations as to leases | Signatures and receipt by escrowee | |
| Section 7. | Responsibility for violations | Schedule A. | Description of premises (to be attached) |
| Section 8. | Destruction, damage or condemnation | Schedule B. | Permitted exceptions |
| Section 9. | Covenants of seller | Schedule C. | Purchase price |
| Section 10. | Seller's closing obligations | Schedule D. | Miscellaneous |
| Section 11. | Purchaser's closing obligations | Schedule E. | Rent schedule (to be attached) |
| Section 12. | Apportionments | | |

CONTRACT dated _____, 20____ between

## God's Chariots To The Heavenly HWY

hereinafter called the "Seller"

and

## Lagree Baptist Church

hereinafter called the "Purchaser"

Seller and Purchaser hereby covenant and agree as follows:
### Section 1.  Sale of Premises and Acceptable Title

§1.01. Seller shall sell to Purchaser, and Purchaser shall purchase from Seller, at the price and upon the terms and conditions set forth in this contract: (a) the parcel of land more particularly described in Schedule A attached hereto ("Land"); (b) all buildings and improvements situated on the Land (collectively, "Building"); (c) all right, title and interest of Seller, if any, in and to the land lying in the bed of any street or highway in front of or adjoining the Land to the center line thereof and to any unpaid award or any taking by condemnation or any damage to the Land by reason of a change of grade of any street or highway; (d) the appurtenances and all the estate and rights of Seller in and to the Land and Building; and (e) all right, title and interest of Seller, if any, in and to the fixtures, equipment and other personal property attached or appurtenant to the Building (collectively, "Premises"). The Premises are located at or known as

## 844 - 862 St. Ann's Ave, Bronx, New York 10458

§1.02. Seller shall convey and Purchaser shall accept fee simple title to the Premises in accordance with the terms of this contract, subject only to: (a) the matters set forth in Schedule B attached hereto (collectively, "Permitted Exceptions"); and (b) such other matters as (i) the title insurer specified in Schedule D attached hereto (or if none is so specified, then any title insurer licensed to do business by the State of New York) shall be willing, without special premium, to omit as exceptions to coverage or to except with insurance against collection out of or enforcement against the Premises and (ii) shall be accepted by any lender described in Section 274-a of the Real Property Law ("Institutional Lender") which has committed in writing to provide mortgage financing to Purchaser for the purchase of the Premises ("Purchaser's Institutional Lender"), except that if such acceptance by Purchaser's Institutional Lender is unreasonably withheld or delayed, such acceptance shall be deemed to have been given.

### Section 2.  Purchase Price, Acceptable Funds, Existing Mortgages, Purchase Money Mortgage, Escrow of Downpayment and Foreign Persons

§2.01.  The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Premises as provided in Schedule C attached hereto is

## $4,000,000.00

§2.02. All monies payable under this contract, unless otherwise specified in this contract, shall be paid by (a) certified checks of Purchaser or any person making a purchase money loan to Purchaser drawn on any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York or (b) official bank checks drawn by any such banking institution, payable to the order of Seller, except that uncertified checks of Purchaser payable to the order of Seller up to the amount of one-half of one percent of the Purchase Price shall be acceptable for sums payable to Seller at the Closing.

§2.03. (a) If Schedule C provides for the acceptance of title by Purchaser subject to one or more existing mortgages (collectively, "Existing Mortgage(s)"), the amounts specified in Schedule C with reference thereto may be approximate.  If at the Closing the aggregate principal amount of the

Existing Mortgage(s), as reduced by payments required thereunder prior to the Closing, is less than the aggregate amount of the Existing Mortgage(s) as specified in Schedule C, the difference shall be added to the monies payable at the Closing, unless otherwise expressly provided herein.

(b)  If any of the documents constituting the Existing Mortgage(s) or the note(s) secured thereby prohibits or restricts the conveyance of the Premises or any part thereof without the prior consent of the holder or holders thereof ("Mortgagee(s)") or confers upon the Mortgagee(s) the right to accelerate payment of the indebtedness or to change the terms of the Existing Mortgage(s) in the event that a conveyance is made without consent of the Mortgagee(s), Seller shall notify such Mortgagee(s) of the proposed conveyance to Purchaser within 10 days after execution and delivery of this contract, requesting the consent of such Mortgagee(s) thereto.  Seller and Purchaser shall furnish the Mortgagee(s) with such information as may reasonably be required in connection with such request and shall otherwise cooperate with such Mortgagee(s) and with each other in an effort expeditiously to procure such consent, but neither shall be obligated to make any payment to obtain such consent.  If such Mortgagee(s) shall fail or refuse to grant such consent in writing on or before the date set forth in Schedule D or shall require as a condition of the granting of such consent (i) that additional consideration be paid to the Mortgagee(s) and neither Seller nor Purchaser is willing to pay such additional consideration or (ii) that the terms of the Existing Mortgage(s) be changed and Purchaser is unwilling to accept such change, then unless Seller and Purchaser mutually agree to extend such date or otherwise modify the terms of this contract, Purchaser may terminate this contract in the manner provided in §13.02.  If Schedule C provides for a Purchase Money Mortgage (as defined in §2.04), Seller may also terminate this contract in the manner provided in §13.02 if any of the foregoing circumstances occur or if Seller is unwilling to accept any change in the terms of the Existing Mortgage(s).

§2.04. (a) If Schedule C provides for payment of a portion of the Purchase Price by execution and delivery to Seller of a note secured by a purchase money mortgage ("Purchase Money Mortgage"), such note and Purchase Money Mortgage shall be drawn by the attorney for the Seller on the most recent forms of the New York Board of Title Underwriters for notes and for mortgages of like lien, as modified by this contract.  At the Closing, Purchaser shall pay the mortgage recording tax and recording fees therefor and the filing fees for any financing statements delivered in connection therewith.

(b)  If Schedule C provides for the acceptance of title by Purchaser subject to Existing Mortgage(s) prior in lien to the Purchase Money Mortgage, the Purchase Money Mortgage shall provide that it is subject and subordinate to the lien(s) of the Existing Mortgage(s) and shall be subject and subordinate to any extensions, modifications, renewals, consolidations, substitutions or replacements thereof (collectively, "Refinancing" or "Refinanced Mortgage"), provided that (i) the rate of interest payable under a Refinanced Mortgage shall not be greater than that specified in Schedule D as the Maximum Interest Rate or, if no Maximum Interest Rate is specified in Schedule D, shall not be greater than the rate of interest that was payable on the refinanced indebtedness immediately prior to such Refinancing, and (ii) if the principal amount of the Refinanced Mortgage plus the principal amount of other Existing Mortgage(s), if any, remaining after placement of a Refinanced

Mortgage exceeds the amount of principal owing and unpaid on all mortgages on the Premises superior to the Purchase Money Mortgage immediately prior to the Refinancing, an amount equal to the excess shall be paid at the closing of the Refinancing to the holder of the Purchase Money Mortgage in reduction of principal payments due thereunder in inverse order of maturity. The Purchase Money Mortgage shall further provide that the holder thereof shall, on demand and without charge therefor, execute, acknowledge and deliver any agreement or agreements reasonably required by the mortgagor to confirm such subordination.

(c)    The Purchase Money Mortgage shall contain the following additional provisions:

(i)    "The mortgagor or any owner of the mortgaged premises shall have the right to prepay the entire unpaid indebtedness together with accrued interest, but without penalty, at any time on or after [insert the day following the last day of the fiscal year of the mortgagee in which the

Closing occurs or, if a Prepayment Date is specified in Schedule D, the specified Prepayment Date]          , on not less than 10 days written notice to the holder hereof."

(ii)    "Notwithstanding anything to the contrary contained herein, the obligation of the mortgagor for the payment of the indebtedness and for the performance of the terms, covenants and conditions contained herein and in the note secured hereby is limited solely to recourse against the property secured by this mortgage, and in no event shall the mortgagor or any principal of the mortgagor, disclosed or undisclosed, be personally liable for any breach of or default under the note or this mortgage or for any deficiency resulting from or through any proceedings to foreclose this mortgage, nor shall any deficiency judgment, money judgment or other personal judgment be sought or entered against the mortgagor or any principal of the mortgagor, disclosed or undisclosed, but the foregoing shall not adversely affect the lien of this mortgage or the mortgagee's right of foreclosure."

(iii)    "In addition to performing its obligations under Section 274-a of the Real Property Law, the mortgagee, if other than one of the institutions listed in Section 274-a, agrees that, within 10 days after written request by the mortgagor, but not more than twice during any period of 12 consecutive months, it will execute, acknowledge and deliver without charge a certificate of reduction in recordable form (a) certifying as to (1) the then unpaid principal balance of the indebtedness secured hereby, (2) the maturity date thereof, (3) the rate of interest, (4) the last date to which interest has been paid and (5) the amount of any escrow deposits then held by the mortgagee, and (b) stating, to the knowledge of the mortgagee, whether there are any alleged defaults hereunder and, if so, specifying the nature thereof."

(iv)    "All notices required or desired to be given under this mortgage shall be in writing and shall be delivered personally or shall be sent by prepaid registered or certified mail, addressed to the mortgagor and mortgagee at the addresses specified in this mortgage or to such other parties or at such other addresses, not exceeding two, as may be designated in a notice given to the other party or parties in accordance with the provisions hereof."

(v) The additional provisions, if any specified in a rider hereto.

§2.05. (a) If the sum paid under paragraph (a) of Schedule C or any other sums paid on account of the Purchase Price prior to the Closing (collectively, "Downpayment") are paid by check or checks drawn to the order of and delivered to Seller's attorney or other escrow agent ("Escrowee"), the Escrowee shall hold the proceeds thereof in escrow in a special bank account (or as otherwise agreed in writing by Seller, Purchaser and Escrowee) until the Closing or sooner termination of this contract and shall pay over or apply such proceeds in accordance with the terms of this section. Escrowee need not hold such proceeds in an interest-bearing account, but if any interest is earned thereon, such interest shall be paid to the same party entitled to the escrowed proceeds, and the party receiving such interest shall pay any income taxes thereon. The tax identification numbers of the parties are either set forth in Schedule D or shall be furnished to Escrowee upon request. At the Closing, such proceeds and the interest thereon, if any, shall be paid by Escrowee to Seller. If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment. If Escrowee does receive such written objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this contract or a final judgment of a court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest thereon, if any, with the clerk of the Supreme Court of the county in which the Land is located. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b)    The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c)    Escrowee has acknowledged agreement to these provisions by signing in the place indicated on the signature page of this contract.

§2.06. In the event that Seller is a "foreign person", as defined in Internal Revenue Code Section 1445 and regulations issued thereunder (collectively, the "Code Withholding Section"), or in the event that Seller fails to deliver the certification of non-foreign status required under §10.12(c), or in the event that Purchaser is not entitled under the Code Withholding Section to rely on such certification, Purchaser shall deduct and withhold from the Purchase Price a sum equal to ten percent (10%) thereof and shall Closing remit the withheld amount with Forms 8288 and 8288A (or any successors thereto) to the Internal Revenue Service; and if the cash balance of the Purchase Price payable to Seller at the Closing after deduction of net adjustments, apportionments and

credits (if any) to be made or allowed in favor of Seller at the Closing as herein provided is less than ten percent (10%) of the Purchase Price, Purchaser shall have the right to terminate this contract, in which event Seller shall refund the Downpayment to Purchaser and shall reimburse Purchaser for title examination and survey costs as if this contract was terminated pursuant to §13.02. The right of termination provided for in this §2.06 shall be in addition to and not in limitation of any other rights or remedies available to Purchaser under applicable law.

**Section 3. The Closing**

§3.01. Except as otherwise provided in this contract, the closing of title pursuant to this contract ("Closing") shall take place on the scheduled date and time of closing specified in Schedule D (the actual date of the Closing being herein referred to as "Closing Date") at the place specified in Schedule D.

**Section 4. Representations and Warranties of Seller**

Seller represents and warrants to Purchaser as follows:

§4.01. Unless otherwise provided in this contract, Seller is the sole owner of the Premises.

§4.02. If the Premises are encumbered by an Existing Mortgage(s), no written notice has been received from the Mortgagee(s) asserting that a default or breach exists thereunder which remains uncured and no such notice shall have been received and remain uncured on the Closing Date. If copies of documents constituting the Existing Mortgage(s) and note(s) secured thereby have been exhibited to and initialed by Purchaser or its representative, such copies are true copies of the originals and the Existing Mortgage(s) and note(s) secured thereby have not been modified or amended except as shown in such documents.

§4.03. The information concerning written leases (which together with all amendments and modifications thereof are collectively referred to as "Leases") and any tenancies in the Premises not arising out of the Leases (collectively, "Tenancies") set forth in Schedule E attached hereto ("Rent Schedule") is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof, and there are no Leases or Tenancies of any space in the Premises other than those set forth therein and any subleases or subtenancies. Except as otherwise set forth in the Rent Schedule or elsewhere in this contract:

(a) all of the Leases are in full force and effect and none of them has been modified, amended or extended;
(b) no renewal or extension options have been granted to tenants;
(c) no tenant has an option to purchase the Premises;
(d) the rents set forth are being collected on a current basis and there are no arrearages in excess of one month;
(e) no tenant is entitled to rental concessions or abatements for any period subsequent to the scheduled date of closing;
(f) Seller has not sent written notice to any tenant claiming that such tenant is in default, which default remains uncured;
(g) no action or proceeding instituted against Seller by any tenant of the Premises is presently pending in any court, except with respect to claims involving personal injury or property damage which are covered by insurance; and
(h) there are no security deposits other than those set forth in the Rent Schedule.

If any Leases which have been exhibited to and initialed by Purchaser or its representative contain provisions that are inconsistent with the foregoing representations and warranties, such representations and warranties shall be deemed modified to the extent necessary to eliminate such inconsistency and to conform such representations and warranties to the provisions of the Leases.

§4.04. If the Premises or any part thereof are subject to the New York City Rent Stabilization Law, Seller is and on the Closing Date will be a member in good standing of the Real Estate Industry Stabilization Association, and, except as otherwise set forth in the Rent Schedule, there are no proceedings with any tenant presently pending before the Conciliation and Appeals Board in which a tenant has alleged an overcharge of rent or diminution of services or similar grievance, and there are no outstanding orders of the Conciliation and Appeals Board that have not been complied with by Seller.

§4.05. If the Premises or any part thereof are subject to the New York City Emergency Rent and Rehabilitation Law, the rents shown are not in excess of the maximum collectible rents, and, except as otherwise set forth in the Rent Schedule, no tenants are entitled to abatements as senior citizens, there are no proceedings presently pending before the rent commission in which a tenant has alleged an overcharge of rent or diminution of services or similar grievance, and there are no outstanding orders of the rent commission that have not been complied with by Seller.

§4.06. If an insurance schedule is attached hereto, such schedule lists all insurance policies presently affording coverage with respect to the Premises, and the information contained therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof.

§4.07. If a payroll schedule is attached hereto, such schedule lists all employees presently employed at the Premises, and the information contained therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof, and, except as otherwise set forth in such schedule, none of such employees is covered by a union contract and there are no retroactive increases or other accrued and unpaid sums owed to any employee.

§4.08. If a schedule of service, maintenance, supply and management contracts ("Service Contracts") is attached hereto, such schedule lists all such contracts affecting the Premises, and the information set forth therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof.

§4.09. If a copy of a certificate of occupancy for the Premises has been exhibited to and initialed by Purchaser or its representative, such copy is a true copy of the original and such certificate has not been amended, but Seller makes no representation as to compliance with any such certificate.

§4.10. The assessed valuation and real estate taxes set forth in Schedule D, if any, are the assessed valuation of the Premises and the taxes paid or payable with respect thereto for the fiscal year indicated in such schedule.

Except as otherwise set forth in Schedule D, there are no tax abatements or exemptions affecting the Premises.

§4.11. Except as otherwise set forth in a schedule attached hereto, if any, if the Premises are used for residential purposes, each apartment contains a range and a refrigerator, and all of the ranges and refrigerators and all of the items of personal property (or replacements thereof) listed in such schedule, if any, are and on the Closing Date will be owned by Seller free of liens and encumbrances other than the lien(s) of the Existing Mortgage(s), if any.

§4.12. Seller has no actual knowledge that any incinerator, boiler or other burning equipment on the Premises is being operated in violation of applicable law. If copies of a certificate or certificates of operation therefor have been exhibited to and initialed by Purchaser or its representative, such copies are true copies of the originals.

§4.13. Except as otherwise set forth in Schedule D, Seller has no actual knowledge of any assessment payable in annual installments, or any part thereof, which has become a lien on the Premises.

§4.14. Seller is a "foreign person" as defined in the Code Withholding Section.

## Section 5. Acknowledgments of Purchaser

Purchaser acknowledges that:

§5.01. Purchaser has inspected the Premises, is fully familiar with the physical condition and state of repair thereof, and, subject to the provisions of §7.01, §8.01, and §9.04, shall accept the premises "as is" and in their present condition, subject to reasonable use, wear, tear and natural deterioration between now and the Closing Date, without any reduction in the Purchase Price for any change in such condition by reason thereof subsequent to the date of this contract.

§5.02. Before entering into this contract, Purchaser has made such examination of the Premises, the operation, income and expenses thereof and all other matters affecting or relating to this transaction as Purchaser deemed necessary. In entering into this contract, Purchaser has not been induced by and has not relied upon any representations, warranties or statements, whether express or implied, made by Seller or any agent, employee or other representative of Seller or by any broker or any other person representing or purporting to represent Seller, which are not expressly set forth in this contract, whether or not any such representations, warranties or statements were made in writing or orally.

## Section 6. Seller's Obligations as to Leases

§6.01. Unless otherwise provided in a schedule attached to this contract, between the date of this contract and the Closing, Seller shall not, without Purchaser's prior written consent, which consent shall not be unreasonably withheld: (a) amend, renew or extend any Lease in any respect, unless required by law; (b) grant a written lease to any tenant occupying space pursuant to a Tenancy; or (c) terminate any Lease or Tenancy except by reason of a default by the tenant thereunder.

§6.02. Unless otherwise provided in a schedule attached to this contract, between the date of this contract and the Closing, Seller shall not permit occupancy of, or enter into any new lease for, space in the Building which is presently vacant or which may hereafter become vacant without first giving Purchaser written notice of the identity of the proposed tenant, together with (a) either a copy of the proposed lease or a summary of the terms thereof in reasonable detail and (b) a statement of the amount of the brokerage commission, if any, payable in connection therewith and the terms of payment thereof. If Purchaser objects to such proposed lease, Purchaser shall so notify Seller within 4 business days after receipt of Seller's notice if such notice was personally delivered to Purchaser, or within 7 business days after the mailing of such notice by Seller to Purchaser, in which case Seller shall not enter into the proposed lease. Unless otherwise provided in a schedule attached to this contract, Purchaser shall pay to Seller at the Closing, in the manner specified in §2.02, the rent and additional rent that would have been payable under the proposed lease from the date on which the tenant's obligation to pay rent would have commenced if Purchaser had not so objected until the Closing Date, less the amount of the brokerage commission specified in Seller's notice and the reasonable cost of decoration or other work required to be performed by the landlord under the terms of the proposed lease to suit the premises to the tenant's occupancy ("Reletting Expenses"), prorated in each case over the term of the proposed lease and apportioned as of the Closing Date. If Purchaser does not so notify Seller of its objection, Seller shall have the right to enter into the proposed lease with the tenant identified in Seller's notice and Purchaser shall pay to Seller, in the manner specified in §2.02, the Reletting Expenses, prorated in each case over the term of the lease and apportioned as of the later of the Closing Date or the rent commencement date. Such payment shall be made by Purchaser to Seller at the Closing. In no event shall the amount so payable to Seller exceed the sums actually paid by Seller on account thereof.

§6.03. If any space is vacant on the Closing Date, Purchaser shall accept the Premises subject to such vacancy, provided that the vacancy was not permitted or created by Seller in violation of any restrictions contained in this contract. Seller shall not grant any concessions or rent abatements for any period following the Closing without Purchaser's prior written consent. Seller shall not apply all or any part of the security deposit of any tenant unless such tenant has vacated the Premises.

§6.04. Seller does not warrant that any particular Lease or Tenancy will be in force or effect at the Closing or that the tenants will have performed their obligations thereunder. The termination of any Lease or Tenancy prior to the Closing by reason of the tenant's default shall not affect the obligations of Purchaser under this contract in any manner or entitle Purchaser to an abatement of or credit against the Purchaser Price or give rise to any other claim on the part of Purchaser.

§6.05. Seller hereby indemnifies and agrees to defend Purchaser against any claims made pursuant to §7-107 or §7-108 of the General Obligations Law (the "GOL") by tenants who resided in the Premises on or prior to the Closing Date other than (a) claims with respect to tenants' security deposits paid, credited or assigned to Purchaser pursuant to §10.03, (b) claims made pursuant to §7-107 of the GOL with respect to funds for which Seller was not liable, and (c) claims made pursuant to §7.108 of the GOL by tenants to whom Purchaser failed to give the written notice specified in §7-108(c) of the GOL within thirty days after the Closing Date. The foregoing indemnity and agreement shall survive the Closing and shall be in lieu of any escrow permitted by §7-108(d) of the GOL, and Purchaser hereby waives any right it may have to require any such escrow.

## Section 7. Responsibility for Violations

§7.01. Except as provided in §7.02 and §7.03, all notes or notices of violations of law or governmental ordinances, orders or requirements which were noted or issued prior to the date of this contract by any governmental department, agency or bureau having jurisdiction as to conditions affecting the Premises and all liens which have attached to the Premises prior to the Closing pursuant to the Administrative Code of the City of New York, if applicable, shall be removed or complied with by Seller. If such removal or compliance has not been completed prior to the Closing, Seller shall pay to Purchaser at the Closing the reasonably estimated unpaid cost to effect or complete such removal or compliance, and Purchaser shall be required to accept title to the Premises subject thereto, except that Purchaser shall not be required to accept such title and may terminate this contract as provided in §13.02 if (a) Purchaser's Institutional Lender reasonably refuses to provide financing by reason thereof or (b) the Building is a multiple dwelling and either (i) such violation is rent impairing and causes rent to be unrecoverable under Section 302-a of the Multiple Dwelling Law or (ii) a proceeding has been validly commenced by tenants and is pending with respect to such violation for a judgment directing deposit and use of rents under Article 7-A of the Real Property Actions and Proceedings Law. All such notes or notices of violations noted or issued on or after the date of this contract shall be the sole responsibility of Purchaser.

§7.02. If the reasonably estimated aggregate cost to remove or comply with any violations or liens which Seller is required to remove or comply with pursuant to the provisions of §7.01 shall exceed the Maximum Amount specified in Schedule D (or if none is so specified, the Maximum Amount shall be one-half of one percent of the Purchase Price), Seller shall have the right to cancel this contract, in which event the sole liability of Seller shall be as set forth in §13.02, unless Purchaser elects to accept title to the Premises subject to all such violations or liens, in which event Purchaser shall be entitled to a credit of an amount equal to the Maximum Amount against the monies payable at the Closing.

§7.03. Regardless of whether a violation has been noted or issued prior to the date of this contract, Seller's failure to remove or fully comply with any violations which a tenant is required to remove or comply with pursuant to the terms of its lease by reason of such tenant's use or occupancy shall not be an objection to title. Purchaser shall accept the Premises subject to all such violations without any liability of Seller with respect thereto or any abatement of or credit against the Purchase Price, except that if Purchaser's Institutional Lender reasonably refuses to provide financing by reason of a violation described above, Purchaser shall not be required to accept the Premises subject thereto and Purchaser shall have the right to terminate this contract in the manner provided in §13.02.

§7.04. If required, Seller, upon written request by Purchaser, shall promptly furnish to Purchaser written authorizations to make any necessary searches for the purposes of determining whether notes or notices of violations have been noted or issued with respect to the Premises or liens have attached thereto.

## Section 8. Destruction, Damage or Condemnation

§8.01. The provisions of Section 5-1311 of the General Obligations Law shall apply to the sale and purchase provided for in this contract.

## Section 9. Covenants of Seller

Seller covenants that between the date of this contract and the Closing:

§9.01. The Existing Mortgage(s) shall not be amended or supplemented or prepaid in whole or in part. Seller shall pay or make, as and when due and payable, all payments of principal and interest and all deposits required to be paid or made under the Existing Mortgage(s).

§9.02. Seller shall not modify or amend any Service Contract or enter into any new service contract unless the same is terminable without penalty by the then owner of the Premises upon not more than 30 days notice.

§9.03. If an insurance schedule is attached hereto, Seller shall maintain in full force and effect until the Closing the insurance policies described in such schedule or renewals thereon for no more than one year of those expiring before the Closing.

§9.04. No fixtures, equipment or personal property included in this sale shall be removed from the Premises unless the same are replaced with similar items of at least equal quality prior to the Closing.

§9.05. Seller shall not withdraw, settle or otherwise compromise any protest or reduction proceeding affecting real estate taxes assessed against the Premises for any fiscal period in which the Closing is to occur or any subsequent fiscal period without the prior written consent of Purchaser, which consent shall not be unreasonably withheld. Real estate tax refunds and credits received after the Closing Date which are attributable to the fiscal tax year during which the Closing Date occurs shall be apportioned between Seller and Purchaser, after deducting the expenses of collection thereof, which obligation shall survive the Closing.

§9.06. Seller shall allow Purchaser or Purchaser's representatives access to the Premises, the Leases and other documents required to be delivered under this contract upon reasonable prior notice at reasonable times.

## Section 10. Seller's Closing Obligations

At the Closing, Seller shall deliver the following to Purchaser:

§10.01. A statutory form of bargain and sale deed without covenant against grantor's acts, containing the covenant required by Section 13 of the Lien Law, and properly executed in proper form for recording so as to convey the title required by this contract.

§10.02. All Leases initialed by Purchaser and all others in Seller's possession.

§10.03. A schedule of all security deposits (and, if the Premises contains six or more family dwelling units, the most recent reports with respect thereto issued by each banking organization in which they are deposited pursuant to GOL §7-103) and a check or credit to Purchaser in the amount of any cash security deposits, including any interest thereon, held by Seller on the Closing Date or, if held by an Institutional Lender, an assignment to Purchaser and written instructions to the holder of such deposits to transfer the same to Purchaser, and appropriate instruments of transfer or assignment with respect to any security deposits which are other than cash.

§10.04. A schedule updating the Rent Schedule and setting forth all arrears in rents and all prepayments of rents.

§10.05. All Service Contracts initialed by Purchaser and all others in Seller's possession which are in effect on the Closing Date and which are assignable by Seller.

§10.06. An assignment to Purchaser, without recourse or warranty, of all of the interest of Seller in those Service Contracts, insurance policies, certificates, permits and other documents to be delivered to Purchaser at the Closing which are then in effect and are assignable by Seller.

§10.07. (a) Written consent(s) of the Mortgagee(s), if required under §2.03(b), and (b) certificate(s) executed by the Mortgagee(s) in proper form for recording and certifying (i) the amount of the unpaid principal balance thereof, (ii) the maturity date thereof, (iii) the interest rate, (iv) the last date to which interest has been paid thereon and (v) the amount of any escrow deposits held by the Mortgagee(s). Seller shall pay the fees for recording such certificate(s). Any Mortgage which is an Institutional Lender may furnish a letter complying with Section 274-a of the Real Property Law in lieu of such certificate.

§10.08. An assignment of all Seller's right, title and interest in escrow deposits for real estate taxes, insurance premiums and other amounts, if any, then held by the Mortgagee(s).

§10.09. All original insurance policies with respect to which premiums are to be apportioned or, if unobtainable, true copies or certificates thereof.

§10.10. To the extent they are then in Seller's possession and not posted at the Premises, certificates, licenses, permits, authorizations and approvals issued for or with respect to the Premises by governmental and quasi-governmental authorities having jurisdiction.

§10.11. Such affidavits as Purchaser's title company shall reasonably require in order to omit from its title insurance policy all exceptions for judgments, bankruptcies or other returns against persons or entities whose names are the same as or similar to Seller's name.

§10.12. (a) Checks to the order of the appropriate officers in payment of all applicable real property transfer taxes and copies of any required tax returns therefor executed by Seller, which checks shall be certified or official bank checks if required by the taxing authority, unless Seller elects to have Purchaser pay any of such taxes and credit Purchaser with the amount thereof, (b) the Tentative Assessment and Return or Statement of No Tax Due or affidavit (whichever is applicable) and the checks and other items (if any) required under §17.09(a), and (c) a certification of non-foreign status, in form required by the Code Withholding Section, signed under penalty of perjury. Seller understands that such certification will be retained by Purchaser and will be made available to the Internal Revenue Service on request.

§10.13. To the extent they are then in Seller's possession, copies of current painting and payroll records. Seller shall make all other Building and tenant files and records available to Purchaser for copying, which obligation shall survive the Closing.

§10.14. An original letter, executed by Seller or by its agent, advising the tenants of the sale of the Premises to Purchaser and directing that rents and other payments thereafter be sent to Purchaser or as Purchaser may direct.

§10.15. Notice(s) to the Mortgagee(s), executed by Seller or by its agent, advising of the sale of the Premises to Purchaser and directing that future bills and other correspondence should thereafter be sent to Purchaser or as Purchaser may direct.

§10.16. If Seller is a corporation and if required by Section 909 of the Business Corporation Law, a resolution of Seller's board of directors authorizing the sale and delivery of the deed and a certificate executed by the secretary or assistant secretary of Seller certifying as to the adoption of such resolution and setting forth facts showing that the transfer complies with the requirements of such law. The deed referred to in §10.01 shall also contain a recital sufficient to establish compliance with such law.

§10.17. Possession of the Premises in the condition required by this contract, subject to the Leases and Tenancies, and keys therefor.

§10.18. Any other documents required by this contract to be delivered by Seller.

### Section 11. Purchaser's Closing Obligations

At the Closing, Purchaser shall:

§11.01. Deliver to Seller checks in payment of the portion of the Purchase Price payable at the Closing, as adjusted for apportionments under Section 12, plus the amount of escrow deposits, if any, assigned pursuant to §10.08.

§11.02. Deliver to Seller the Purchase Money mortgage, if any, in proper form for recording, the note secured thereby, financing statements covering personal property, fixtures and equipment included in this sale and replacements thereof, all properly executed, and Purchaser shall pay the mortgage recording tax and recording fees for any Purchase Money Mortgage.

§11.03. Deliver to Seller an agreement indemnifying and agreeing to defend Seller against any claims made by tenants with respect to tenants' security deposits to the extent paid, credited or assigned to Purchaser under §10.03.

§11.04. Cause the deed to be recorded, duly complete all required real property transfer tax returns and cause all such returns and checks in payment of such taxes to be delivered to the appropriate officers promptly after the Closing.

§11.05. Deliver any other documents required by this contract to be delivered by Purchaser.

### Section 12. Apportionments

§12.01. The following apportionments shall be made between the parties at the Closing as of the close of business on the day prior to the Closing Date:
    (a)   prepaid rents and Additional Rents (as defined in §12.03);
    (b)   interest on the Existing Mortgage(s);
    (c)   real estate taxes, water charges, sewer rents and vault charges, if any, on the basis of the fiscal period for which assessed, except that if there is a water meter on the Premises, apportionment at the Closing shall be based on the last available reading, subject to adjustment after the Closing when the next reading is available;

    (d)   wages, vacation pay, pension and welfare benefits and other fringe benefits of all persons employed at the Premises whose employment was not terminated at or prior to the Closing;
    (e)   value of fuel stored on Premises, at the price then charged by Seller's supplier, including any taxes;
    (f)   charges under transferable Service Contracts or permitted renewals or replacements thereof;
    (g)   permitted administrative charges, if any, on tenants' security deposits;
    (h)   dues to rent stabilization associations, if any;
    (i)   insurance premiums on transferable insurance policies listed on a schedule hereto or permitted renewals thereof;
    (j)   Reletting Expenses under §6.02, if any; and
    (k)   any other items listed in Schedule D.

If the Closing shall occur before a new tax rate is fixed, the apportionment of taxes at the Closing shall be upon the basis of the old tax rate for the preceding period applied to latest assessed valuation. Promptly after the new tax rate is fixed, the apportionment of taxes shall be recomputed. Any discrepancy resulting from such recomputation and any errors or omissions in computing apportionments at Closing shall be promptly corrected, which obligations shall survive the Closing.

§ 12.02. If any tenant is in arrears in the payment of rent on the Closing Date, rents received from such tenant after the Closing shall be applied in the following order of priority: (a) first to the month preceding the month in which the Closing occurred; (b) then to the month in which the Closing occurred; (c) then to any month or months following the month in which the Closing occurred; and (d) then to the period prior to the month preceding the month in which the Closing occurred. If rents or any portion thereof received by Seller or Purchaser after the Closing are payable to the other party by reason of this allocation, the appropriate sum, less a proportionate share of any reasonable attorneys' fees, costs and expenses of collection thereof, shall be promptly paid to the other party, which obligation shall survive the Closing.

§12.03. If any tenants are required to pay percentage rent, escalation charges for real estate taxes, operating expenses, cost-of-living adjustments or other charges of a similar nature ("Additional Rents") and any Additional Rents are collected by Purchaser after the Closing which are attributable in whole or in part to any period prior to the Closing, then Purchaser shall promptly pay to Seller Seller's proportionate share thereof, less a proportionate share of any reasonable attorneys' fees, costs and expenses of collection thereof, if and when the tenant paying the same has made all payments of rent and Additional Rent then due to Purchaser pursuant to the tenant's Lease, which obligation shall survive the Closing.

### Section 13. Objections to Title, Failure of Seller or Purchaser to Perform and Vendee's Lien

§13.01. Purchaser shall promptly order an examination of title and shall cause a copy of the title report to be forwarded to Seller's attorney upon receipt. Seller shall be entitled to a reasonable adjournment or adjournments of the Closing for up to 60 days or until the expiration date of any written commitment of Purchaser's Institutional Lender delivered to Purchaser prior to the scheduled date of Closing, whichever occurs first, to remove any defects in or objections to title noted in such title report and any other defects or objections which may be disclosed on or prior to the Closing Date.

§13.02. If Seller shall be unable to convey title to the Premises at the Closing in accordance with the provisions of this contract or if Purchaser shall have any other grounds under this contract for refusing to consummate the purchase provided for herein, Purchaser, nevertheless, may elect to accept such title as Seller may be able to convey with a credit against the monies payable at the Closing equal to the reasonably estimated cost to cure the same (up to the Maximum Expense described below), but without any other credit or liability on the part of Seller. If Purchaser shall not so elect, Purchaser may terminate this contract and the sole liability of Seller shall be to refund the Downpayment to Purchaser and to reimburse Purchaser for the net cost of title examination, but not to exceed the net amount charged by Purchaser's title company therefor without issuance of a policy, and the net cost of updating the existing survey of the Premises or the net cost of a new survey of the Premises if there was no existing survey or the existing survey was not capable of being updated and a new survey was required by Purchaser's Institutional Lender. Upon such refund and reimbursement, this contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability other than any arising under Section 14. Seller shall not be required to bring any action or proceeding or to incur any expense in excess of the Maximum Expense specified in Schedule D (or if none is so specified, the Maximum Expense shall be one-half of one percent of the Purchase Price) to cure any title defect or to enable Seller otherwise to comply with the provisions of this contract, but the foregoing shall not permit Seller to refuse to pay off at the Closing, to the extent of the monies payable at the Closing, mortgages on the Premises, other than Existing Mortgages, of which Seller has actual knowledge.

§13.03. Any unpaid taxes, assessments, water charges and sewer rents, together with the interest and penalties thereon to a date not less than two days following the Closing Date, and any other liens and encumbrances which Seller is obligated to pay and discharge or which are against corporations, estates or other persons in the chain of title, together with the cost of recording or filing any instruments necessary to discharge such liens and encumbrances of record, may be paid out of the proceeds of the monies payable at the Closing if Seller delivers to Purchaser on the Closing Date official bills for such taxes, assessments, water charges, sewer rents, interest and penalties and instruments in recordable form sufficient to discharge any other liens and encumbrances of record. Upon request made a reasonable time before the Closing, Purchaser shall provide at the Closing separate checks for the foregoing payable to the order of the holder of any such lien, charge or encumbrance and otherwise complying with §2.02. If Purchaser's title insurance company is willing to insure both Purchaser and Purchaser's Institutional Lender, if any, that such charges, liens and encumbrances will not be collected out of or enforced against the Premises, then, unless Purchaser's Institutional Lender reasonably refuses to accept such insurance in lieu of actual payment and discharge, Seller shall have the right in lieu of payment and discharge to deposit with the title insurance company such

funds or assurances or to pay such special or additional premiums as the title insurance company may require in order to so insure. In such case the charges, liens and encumbrances with respect to which the title insurance company has agreed so to insure shall not be considered objections to title.

§13.04. If Purchaser shall default in the performance of its obligation under this contract to purchase the Premises, the sole remedy of Seller shall be to retain the Downpayment as liquidated damages for all loss, damage and expense suffered by Seller, including without limitation the loss of its bargain.

§13.05. Purchaser shall have a vendee's lien against the Premises for the amount of the Downpayment, but such lien shall not continue after default by Purchaser under this contract.

### Section 14.  Broker

§14.01. If a broker is specified in Schedule D, Seller and Purchaser mutually represent and warrant that such broker is the only broker with whom they have dealt in connection with this contract and that neither Seller nor Purchaser knows of any other broker who claimed or may have the right to claim a commission in connection with this transaction, unless otherwise indicated in Schedule D. The commission of such broker shall be paid pursuant to separate agreement by the party specified in Schedule D. If no broker is specified in Schedule D, the parties acknowledge that this contract was brought about by direct negotiation between Seller and Purchaser and that neither Seller nor Purchaser knows of any broker entitled to a commission in connection with this transaction. Unless otherwise provided in Schedule D, Seller and Purchaser shall indemnify and defend each other against any costs, claims or expenses, including attorneys' fees, arising out of the breach on their respective parts of any representations, warranties or agreements contained in this paragraph. The representations and obligations under this paragraph shall survive the Closing or, if the Closing does not occur, the termination of this contract.

### Section 15.  Notices

§15.01. All notices under this contract shall be in writing and shall be delivered personally or shall be sent by prepaid registered or certified mail, addressed as set forth in Schedule D, or as Seller or Purchaser shall otherwise have given notice as herein provided.

### Section 16.  Limitations on Survival of Representations, Warranties, Covenants and other Obligations

§16.01. Except as otherwise provided in this contract, no representations, warranties, covenants or other obligations of Seller set forth in this contract shall survive the Closing, and no action based thereon shall be commenced after the Closing. The representations, warranties, covenants and other obligations of Seller set forth in §4.03, §6.01 and §6.02 shall survive until the Limitation Date specified in Schedule D (or if none is specified, the Limitation Date shall be the date which is six months after the Closing Date), and no action based thereon shall be commenced after the Limitation Date.

§16.02. The delivery of the deed by Seller, and the acceptance thereof by Purchaser, shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations of Seller which are expressly stated in this contract to survive the Closing.

### Section 17.  Gains Tax and Miscellaneous Provisions

§17.01. If consent of the Existing Mortgagee(s) is required under §2.03(b), Purchaser shall not assign this contract or its rights hereunder without the prior written consent of Seller. No permitted assignment of Purchaser's rights under this contract shall be effective against Seller unless and until an executed counterpart of the instrument of assignment shall have been delivered to Seller and Seller shall have been furnished with the name and address of the assignee. The term "Purchaser" shall be deemed to include the assignee under any such effective assignment.

§17.02. This contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated herein, and all prior agreements, understandings, representations and statements, oral or written, are merged into this contract. Neither this contract nor any provision hereof may be waived, modified, amended, discharged or terminated except by an instrument signed by the party against whom the enforcement of such

waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

§17.03. This contract shall be governed by, and construed in accordance with, the law of the State of New York.

§17.04. The captions in this contract are inserted for convenience of reference only and in no way define, describe or limit the scope or intent of this contract or any of the provisions hereof.

§17.05. This contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

§17.06. This contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser.

§17.07. As used in this contract, the masculine shall include the feminine and neuter, the singular shall include the plural and the plural shall include the singular, as the context may require.

§17.08. If the provisions of any schedule or rider to this contract are inconsistent with the provisions of this contract, the provisions of such schedule or rider shall prevail. Set forth in Schedule D is a list of any and all schedules and riders which are attached hereto but which are not listed in the Table of Contents.

§17.09. (a) Seller and Purchaser agree to comply in a timely manner with the requirements of Article 31-B of the Tax Law of the State of New York and the regulations applicable thereto, as the same from time to time may be amended (collectively, the "Gains Tax Law"). Purchaser agrees to deliver to Seller a duly executed and acknowledged Transferee Questionnaire simultaneously with the execution of this contract or within five (5) business days after subsequent written request from Seller or Seller's attorney. At the Closing, Seller shall deliver (i) an official Statement of No Tax Due or (ii) an official Tentative Assessment and Return accompanied by a certified check or official bank check drawn on any banking institution described in §2.02(a), payable to the order of the State Tax Commission in the amount of the tax shown to be due thereon (it being understood, however, that if Seller has duly elected to pay such tax in installments, the amount so required to be paid shall be the minimum installment of such tax then permitted to be paid), or (iii) if applicable, a duly executed and acknowledged affidavit in form permitted under the Gain Tax Law claiming exemption therefrom.

(b) Seller agrees (i) to pay promptly any installment(s) or additional tax due under the Gains Tax Law, and interest and penalties thereon, if any, which may be assessed or due after the Closing, (ii) to indemnify and save the Purchaser harmless from and against any of the foregoing and any damage, liability, cost or expense (including reasonable attorneys' fees) which may be suffered or incurred by Purchaser by reason of the non-payment thereof, and (iii) to make any other payments and execute, acknowledge and deliver such further documents as may be necessary to comply with the Gains Tax Law.

(c) If this contract is assignable by Purchaser, no assignment of any rights hereunder shall be effective unless every assignor and assignee complies in a timely manner with the requirements of the Gains Tax Law applicable to the assignment transaction and unless an assignor or assignee delivers to Seller at or before the Closing the applicable items referred to in subparagraph (a) of this Section, all as may be required as a prerequisite to the recording of the deed. In addition to making the payments and delivering the instruments and documents referred to above, Purchaser and any assignor or assignee of this contract shall promptly (i) make any other payments and (ii) execute, acknowledge and deliver such further documents and instruments as may be necessary to comply with the Gains Tax Law.

(d) Purchaser, if request is made within a reasonable time prior to the Closing Date, shall provide at the Closing a separate certified or official bank check drawn on any banking institution described in §2.02(a) in the amount of the tax shown to be due on the official Tentative Assessment and Return, which amount shall be credited against the balance of the Purchase Price payable at the Closing.

(e) The provisions of this §17.09 shall survive the delivery of the deed.

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the date first above written.

| | |
|---|---|
| Lagree Baptist Church**,** Purchaser | God's Chariots To The Heavenly HWY**,** Seller |
| **,** Purchaser | **,** Seller |
| **,** Purchaser | **,** Seller |
| **,** Purchaser | **,** Seller |

**Receipt by Escrowee:** The undersigned Escrowee hereby acknowledges receipt of $500,000.00, by check subject to collection, to be held in escrow pursuant to §2.05.

ESCROW AGENT

**Schedule A**
DESCRIPTION OF PREMISES

(to be attached separately and to include tax map designation)

### Schedule B
**PERMITTED EXCEPTIONS**

1. Zoning regulations and ordinances which are not violated by the existing structures or present use thereof and which do not render title uninsurable.

2. Consents by the Seller or any former owner of the Premises for the erection of any structure or structures on, under or above any street or streets on which the Premises may abut.

3. The Existing Mortgage(s) and financing statements, assignments of leases and other collateral assignments ancillary thereto.

4. Leases and Tenancies specified in the Rent Schedule and any new leases or tenancies not prohibited by this contract.

5. Unpaid installments of assessments not due and payable on or before the Closing Date.

be deemed to render title unmarketable, and Purchaser shall accept title subject thereto:

### Schedule C

**PURCHASE PRICE**

The Purchase Price shall be paid as follows:

(a)  By check subject to collection, the receipt of which is hereby acknowledged by Seller: **$500,000.00**
(b)  By check or checks delivered to Seller at the Closing in accordance with the provisions of §2.02:
(c)  By acceptance of title subject to the following Existing Mortgage(s):

(d)  By execution and delivery to Seller by Purchaser or its assignee of a note secured by a Purchase Money Mortgage on the Premises, payable as follows:

6. Financing statements, chattel mortgages and liens on personalty filed more than 5 years prior to the Closing Date and not renewed, or filed against property or equipment no longer located on the Premises or owned by Tenants.

7. (a) Rights of utility companies to lay, maintain, install and repair pipes, lines, poles, conduits, cable boxes and related equipment on, over and under the Premises, provided that none of such rights imposes any monetary obligation on the owner of the Premises.

(b)  Encroachments of stoops, areas, cellar steps, trim cornices, lintels, window sills, awnings, canopies, ledges, fences, hedges, coping and retaining walls projecting from the Premises over any street or highway or over any adjoining property and encroachments of similar elements projecting from adjoining property over the Premises.

(c)  Revocability or lack of right to maintain vaults, coal chutes, excavations or sub-surface equipment beyond the line of the Premises.

(d)  Any state of facts that an accurate survey would disclose, provided that such facts do not render title unmarketable. For the purposes of this contract, none of the facts shown on the survey, if any, identified below shall

### Schedule D

MISCELLANEOUS

1. Title insurer designated by the parties (§1.02):
Any reputable title

2. Last date for consent by Existing Mortgagee(s) (§2.03(b)):

3. Maximum Interest Rate of any Refinanced Mortgage (§2.04(b)):

4. Prepayment Date on or after which Purchase Money Mortgage may be prepaid (§2.04(c)):

5. Seller's tax identification number (§2.05):
WITH ATTORNEY

6. Purchaser's tax identification number (§2.05):
WITH ATTORNEY

7. Scheduled time and date of Closing (§3.01):
**On or about  days from the date hereof**

8. Place of Closing (§3.01):
**2620 E. 18th Street
Brooklyn, NY 11235**

9. Assessed valuation of Premises(§4.10):
    Actual Assessment: **NO REPRESENTATION MADE**
    Transition Assessment: **NO REPRESENTATION MADE**
10. Fiscal year and annual real estate taxes on Premises (§4.10):
**NO REPRESENTATION MADE**

11. Tax abatements or exemptions affecting Premises (§4.10):
**NO REPRESENTATION MADE**

12. Assessments on Premises (§4.13):
**NO REPRESENTATION MADE**

13. Maximum Amount which Seller must spend to cure violations, etc. (§7.02):
**$1,000.00**

14. Maximum Expense of Seller to cure title defects, etc. (§13.02):
**$1,000.00**

15. Broker, if any (§14.01):
**Chattel Real Estate
Property Appraisal Services**

16. Party to pay broker's commission (§14.01):
**Seller**

17. Address for notices (§15.01):
    If to Seller:

**Yevgeny Levin, Esq
Levin Law Group**

**2620 E. 18th Street
Brooklyn, NY 11235**

If to Purchaser:
**Bruce Bozeman, Esq
The Bozeman Law Firm, LLP**
6 Gramatan Ave
Mount Vernon, NY 10550

18. Limitation Date for actions based on Seller's surviving representations and other obligations (§16.01):
**30 Days**

19. Additional Schedules or Riders (§17.08):
**Seller's Rider**

**STANDARD FORM OF NEW YORK BOARD OF TITLE UNDERWRITERS**
**Distributed By**

### Schedule E
**RENT SCHEDULE**
**(to be attached separately)**

### RIDER TO THE CONTRACT OF SALE
Dated _____, 20____
**Between**
**God's Chariots To The Heavenly HWY,  as Seller, and**
**Lagree Baptist Church,   as Purchaser**

### CONFLICT BETWEEEN CONTRACT & RIDER

1.      If the terms, conditions, or provisions of this rider are in conflict with any of the terms, conditions or provisions of the printed form of the contract of sale, the terms, conditions and provisions of this rider shall govern and be binding.  This rider has been executed simultaneously with the Contract of Sale to which it is annexed.

### CONDITION OF PROPERTY

2.      Seller has not made and does not make any representation verbal and/or in writing as to the physical condition, income, expenses, operation, real estate taxes, utilities or any other matter or thing affecting the Premises, except as specifically set forth herein, and the Purchaser hereby expressly acknowledges that no representations have been made. Purchaser agrees to take the Premises **AS IS** as of the date of this contract, reasonable wear and tear. The Seller is not bound in any manner by any verbal or written statements by any real estate broker, agent, employee, servant or any other person unless same are specifically set forth herein.

3.      Supplementing and modifying Paragraph 2 of the Contract: Seller is not obligated to install any equipment or appliances in the Premises or otherwise make any repairs, improvements and/or decorations to the Premises or its equipment, appliances and/or fixtures.  Purchaser takes the Premises and all appliances, equipment and fixtures "as is."

4.      Purchaser shall accept the floors, doors, ceilings, windows and other surfaces of the Premises in "as is" condition and Purchaser shall accept the walls at the Premises subject to minor chips, holes and indentations that are ordinarily created from the removal of paintings, photographs or other hanging items which Seller is permitted to remove, provided that the chips, holes and indentations are capable of being repaired by the application of spackling or some similar compound.

5.      This contract is NOT conditioned upon any Phase I, Phase II, homeowners, environmental or any other inspection (the "Inspections").  Purchaser has conducted his due diligence prior to the signing of this contract and has waived any issues that could have come up during the course of the Inspections.

### CERTIFICATE OF OCCUPANCY

6.      If the Seller cannot deliver a Certificate of Occupancy (or other required Certificate of Compliance, Work Permit, Governmental Approval or evidence that none of the above is required) as provided for in Paragraph 16(b) of the Contract of Sale, and if Purchaser shall still be unwilling to waive the same and to close this transaction without allowance or abatement of the purchase price, this Agreement shall be deemed cancelled and the downpayment shall be returned to the Purchaser. In no event shall seller be required to expend any money or commence any action in order to obtain said Certificate of Occupancy (or other required Certificate of Compliance, Work Permit, Governmental Approval or evidence that none of the above is required).





7.      Notwithstanding anything herein to the contrary, the Seller makes no representation as to the existence of a Certificate of Occupancy, Certificate of Completion, Work Permit or any other governmental approval for any existing *wood deck, shed, above-ground pool, fence, fireplace, wood burning stove or finished basement or attic* in or on the Premises. Purchaser shall take the Premises subject to the lack of such Certificate of Occupancy, Certificate of Completion, Work Permit or any other governmental approval without allowance or abatement to the purchase price.

8.      Seller shall not be responsible for curing any violations or closing any "open permits" that are the responsibility of the Tenant to cure or close pursuant to any lease or the applicable New York Landlord/Tenant Law. Purchaser shall take subject to such violations and open permits.

## FULL PERFORMANCE

9.      The acceptance of the deed by Purchaser shall be deemed full and complete performance by and discharge of the Seller of all the terms, conditions and agreements to be performed hereunder, and no liability therefore on the part of the Seller shall survive the delivery of the deed. None of the provisions of this contract shall survive the delivery of the deed, except as shall be specifically provided in writing to survive the closing.

## MARKETABLE TITLE

10.     Pursuant to paragraph 21 of the contract, if, for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such liens, encumbrances, objections or other grounds and if Purchaser shall still be unwilling to waive the same and to close this transaction without allowance or abatement of the purchase price, this Agreement shall be deemed cancelled and the downpayment returned to the Purchaser. In no event shall seller be required to expend any money or commence any action in order to cure any purported defect or objection or to deliver title to the Premises to Purchaser pursuant hereto. Any attempt at curing such defects shall not be a waiver of Seller's rights under this Section.

11.     Not less than Ten (10) days prior to the date of closing, Purchaser will provide to Seller's attorney, in writing, specification of any objection which Purchaser may then have to the insurability of the title of the Premises; a copy of the title report containing such objections shall be deemed sufficient notice thereof.

## DISHONORED DOWNPAYMENT CHECK

12.     In the event that the check tendered as down payment and delivered to Seller upon execution of this contract is dishonored for any reason by the bank upon which it is drawn, this shall constitute a default by Purchaser, and thereupon the Seller may, at its option, and in addition to other remedies and rights of Seller, declare this contract null and void at its end and thereupon the Seller shall be released and relieved from all obligations hereunder. If Seller elects to re-instate the contract, the Purchaser shall pay Seller's Attorney the sum of $150.00 as a service fee in addition to replacing said dishonored check with either a certified check or an official bank check.

## ASSIGNMENT & RECORDING

13.     This contract may not be assigned by the Purchaser without the written consent of the Seller, which consent the Seller may withhold for any reason whatsoever. This contract shall not be recorded and any attempt to do so shall constitute a default hereunder.

14.     If the Seller, at his sole discretion, agrees to allow the Purchaser to assign the contract, the Purchaser shall pay the Seller's attorney $500.00 for review of the assignment documents.

  

## TENANCIES

15.    Premises shall be delivered subject to the following tenancies:

| Tenant Name | Monthly Rent | Security Deposit | Lease |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

## DEPOSIT HELD IN ESCROW

16.    The down-payment (the "Down-Payment") made on the execution of this Agreement shall be held in escrow by the Law Offices of Yevgeny Levin, PLLC (the "Escrow Agent"), 2625 E. 16th Street, Brooklyn NY 11235, in a non-interest bearing account, maintained at Citibank, 1528 Sheepshead Bay Rd, Brooklyn, NY 11235 until the closing of title.

At the closing, the Escrow Agent shall disburse the Down-Payment to Sellers. If this agreement is terminated, the Escrow Agent shall disburse the Down-Payment to the party entitled thereto in accordance with the provisions of this Agreement.

It is agreed that the duties of the Escrow Agent are only as herein specifically provided, purely ministerial in nature, and that the Escrow Agent shall incur no liability whatsoever except for willful misconduct or gross negligence. Sellers and Purchasers hereby release the Escrow Agent in good faith in performance of its duties hereunder. If the Escrow Agent is named as a party to any litigation related to the holding of Escrow funds, the Plaintiff in such action shall be responsible to compensate the Escrow Agent for any reasonable attorney's fees the Escrow Agent shall incur, but in no event less than $3,000.00.

The Escrow Agent is acting only as a stakeholder with respect to the Down-Payment. If a dispute arises as to when the Escrow Agent is obligated to disburse the Down-Payment or as to whom the same is to be disbursed, the Escrow Agent shall not be obligated to disburse the escrow amount but in such event may hold same in escrow as provided herein. The Purchaser shall, within ninety (90) days of giving notice of such dispute, commence litigation against the Seller to resolve the dispute. Seller's attorney is authorized to accept service of the Summons and Complaint within said timer period so that the litigation may be commenced. If Summons and Complaint is not received by Seller's attorney within said time period, then the Escrow Agent shall be authorized to release the escrow funds to the Seller without any further notice.

The Escrow Agent has executed this agreement to confirm that the Escrow Agent is holding and will hold said Down-Payment in escrow pursuant to the provisions hereof and for no other purpose.

If the Seller shall retain a new attorney prior to Closing, the Escrow Agent may release the Downpayment to such new attorney and such new attorney shall agree to hold the Downpayment, in writing, pursuant to the terms hereof. Thereafter, the Escrow Agent shall have no further obligations under this Agreement.

If there is a dispute regarding the Downpayment, the Escrow Agent may continue to hold the Downpayment pursuant to the terms of this Agreement or may deposit the Downpayment in court





in the county where the property is located and the Escrow Agent shall have no further obligations under this Agreement.

## NOTICES

17.    All notices hereunder shall be served in writing via Certified Mail, Return Receipt Requested or via Overnight mail to the attorneys for the respective parties at the addresses provided below. All notices may also be made by email or facsimile, with confirmation of delivery.

18.

    If to Purchaser                  **Bruce Bozeman, Esq**
                                           **The Bozeman Law Firm, LLP**
                                           6 Gramatan Ave
                                         Mount Vernon, NY 10550
                                         914-867-7522

    If to Seller or Escrow Agent:      **Yevgeny Levin, Esq**
                                           **Levin Law Group, PLLC**
                                         2620 E. 18th Street, Suite #2
                                         Brooklyn, NY 11235
                                         Fax: 718-989-7216

    Each Notice mailed shall be deemed given on the third business day following the     date of mailing the same, except that any Notice to Escrowee shall be deemed to    be given only upon receipt by Ecrowee and each Notice delivered in person or by     overnight courier or by email or facsimile shall be deemed given when delivered.

## LITIGATION

19.    If litigation is commenced in connection with this contract of sale, both the Purchaser and Seller waive their right to a jury trial.

20.    If litigation is commenced in connection with this contract of sale, the losing party shall pay all court costs and reasonable attorneys' fees of the prevailing party.

21.    The Escrow Agent shall not be named a party to any litigation between Purchaser and Seller.  If Escrow Agent is named as a party, the plaintiff in said action shall reimburse the Escrow Agent for all costs and reasonable attorneys' fees.

## CLOSING POSTPONEMENT

22.    If a Closing is scheduled and the Purchaser (or Purchaser's attorney or Purchaser's lending institution) postpones the Closing due to no fault of the Seller within 48 hours of the date scheduled for Closing, the Purchaser shall pay Seller's attorney $500 to defray the cost of preparing closing documents and other scheduling expenses.

## PRE-CLOSING POSSESSION

23.    Unless a Pre-Closing Possession agreement is signed by both the Seller and Purchaser, a Purchaser's possession of the premises shall result in an immediate material breach of this Contract and shall entitle the Seller to retain the downpayment as liquidated damages.





24.     Purchaser shall not access the property without the Seller or a representative of the Seller.   Such access shall result in a waiver of any claim the Purchaser may have regarding the physical condition of the Premises under this Contract.

## MISCELLANEOUS

25.     It is expressly understood that the tender of this contract to the Purchaser or purchaser's Attorney shall not constitute an offer or create any rights in favor of the Purchaser and shall in no way obligate or bind the Seller and shall have no force and effect unless and until the same is duly executed by both Seller and Purchaser and a fully executed copy is delivered to the Purchaser or Purchaser's attorney via regular mail, overnight mail, facsimile or email. Seller reserves the right at any time prior to the delivery of a fully executed copy of this contract to Purchaser or Purchaser's attorney to decline to proceed with the transaction, and Seller shall be in no way bound until the completion of delivery of the fully executed contract to the Purchaser or Purchaser's attorney.

26.     It is agreed that the assignment by Seller to Purchaser of any fixtures and or personal property is incidental to the sale of the Property, and accordingly, there is no obligation for sales (or similar) tax to be paid or accrue in regards thereto.

27.     The attorneys are authorized on behalf of their respective clients to change, modify, alter or amend any terms or conditions or time limitations stated in this Contract by and on behalf of their clients. The attorneys are also authorized to accept notice on behalf of their respective clients.

28.     This document may be executed in any number of counterparts (including by facsimile or other electronic means of transmission), each of which so executed shall be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

29.     The parties understand that the sale is subject to approval by the United States Bankruptcy Court for the Southern District of New York, which is presiding over the Seller's chapter 11 proceeding, case number 16-13585 (SMB).

[SIGNATURE PAGE TO FOLLOW]


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]





**SIGNATURE PAGE**
**TO THE RIDER TO THE CONTRACT OF SALE**

_____    _____
God's Chariots To The Heavenly HWY            Lagree Baptist Church





# EXHIBIT B

LAW OFFICE OF ANTHONY M. VASSALLO
305 Fifth Avenue | Suite 1B
Brooklyn, NY 11215
Tel. (347) 464-8277
Fax (866) 334-9752
info@amvasslaw.com

*Proposed Counsel to the Debtor*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
In re:

GOD'S CHARIOTS TO THE HEAVENLY         Case No.: 16-13585 (SMB)
HIGHWAY INC.,                                      Chapter 11

                            Debtor.
-----------------------------------------------------X

## NOTICE OF HEARING ON MOTION OF DEBTOR TO SELL COMMERCIAL REAL PROPERTY LOCATED AT 844-862 ST. ANNS AVENUE, BRONX, NY 10456 TO LAGREE BAPTIST CHURCH, OR SUCH ENTITY WHICH MAKES A HIGHER AND BETTER BID; AND (II) GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that on June 16, 2017, God's Chariots to the Heavenly

Highway (the "*Debtor*") filed a motion (the "*Motion*") [ECF #_____] for the entry of an order,

pursuant to 11 U.S.C. § 105(a) and 363, Rule 6004 of the Federal Rules of Bankruptcy

Procedure, and pursuant to the amended guidelines for the conduct of asset sales adopted by

General Order M-383, authorizing the sale of commercial real property located at 844-862 St.

Anns Avenue. Bronx, NY 10456 (the "*Property*") to LaGree Baptist Church, free and clear of all

liens, claims, encumbrances and interests, or to any other qualified bidder which timely submits

a better and higher offer for the Property.

**PLEASE TAKE FURTHER NOTICE** that the Property consists of an approximate

10,699 square foot lot containing 3-story, brick and cinder block, commercial office building

built in 1925.

**PLEASE TAKE FURTHER NOTICE** that the proposed buyer for the Property is LaGree Baptist Church with a proposed purchase price of $4,000,000.

**PLEASE TAKE FURTHER NOTICE** that a hearing to approve the sale of the Property will be held on July 18, 2017 at 10:00 a.m. (ET) before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, United States Bankruptcy Court, One Bowling Green, Courtroom 728, New York, New York 10004.

**PLEASE TAKE FURTHER NOTICE**, that objections, if any, to the Motion, must be made in writing, must conform to the requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, must set forth with reasonable specificity the basis thereof, and must be filed no later than 5:00 p.m. on July 11, 2017 as follows: (a) by registered users of the Court's electronic case filing system, electronically in accordance with General Order M- 399. A copy of such response must be delivered to the Chambers of the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, United States Bankruptcy Court, One Bowling Green, Room 723, New York, New York 10004, and served upon and received by (i) Brian Masumoto, Esq., Staff Attorney to the United States Trustee, 201 Varick Street, Suite 1006, New York, New York 10014; (ii)  Anthony M. Vassallo, Esq., Attorney for the Debtor, 305 Fifth Avenue, Suite 1B, Brooklyn, NY 11215; and (iii) Phillips Lytle LLP, 340 Madison Avenue, 17th floor, New York, NY 10173-1022, attn: Nicholas Karavolas, Esq., attorneys for NYCTL 2015-A Trust and The Bank of New York Mellon, as Collateral Agent and Custodian. Any response must set forth the grounds for and the facts supporting the response and must: (i) identify the response by the name of the responding party, (ii) indicate the hearing date on the upper right hand of the objection, and (iii) bear the caption and case number of this case.

**PLEASE TAKE FURTHER NOTICE**, that if you intend to submit a higher and better offer, such offer must be delivered so as to be received no later than 4:30 p.m. on July 11, 2017 by the following parties: (i) Brian Masumoto, Esq., Staff Attorney to the United States Trustee, 201 Varick Street, Suite 1006, New York, New York 10014; (ii)  Anthony M. Vassallo, Esq., Attorney for the Debtor, 305 Fifth Avenue, Suite 1B, Brooklyn, NY 11215; (iii) Phillips Lytle LLP, 340 Madison Avenue, 17th floor, New York, NY 10173-1022, attn: Nicholas Karavolas, Esq., attorneys for NYCTL 2015-A Trust and The Bank of New York Mellon, as Collateral Agent and Custodian, and (iv) The Bozeman Law Firm, LLP, 6 Grammatan Avenue, Mt. Vernon, NY 10550, attn: Bruce Bozeman, Esq., attorney for the Purchaser. The offer must include proof of the financial wherewithal to close the sale of the Property and must include a contract of sale similar to the contract annexed to the Motion with a statement as to why the offer is higher and better than the one that is the subject of this Motion.

**PLEASE TAKE FURTHER NOTICE**, that you need not appear at the Sale Hearing if you do not object to the requested relief.

**PLEASE TAKE FURTHER NOTICE**, that the Sale Hearing may be adjourned from time to time without further notice other than by announcement of the adjournment date at the Sale Hearing.

Dated:  New York, New York
          June 15, 2017

**LAW OFFICE OF ANTHONY M. VASSALLO**
Attorney for God's Chariot to the Heavenly
Highway, Debtor and Debtor-in-Possession

By: /s/ Anthony M. Vassallo
        Anthony M. Vassallo
        305 Fifth Avenue, Suite 1B
        Brooklyn, NY 11215
        (347) 464-8277

3

**EXHIBIT C**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:

GOD'S CHARIOTS TO THE HEAVENLY          Case No.: 16-13585 (SMB)
HIGHWAY INC.,                                              Chapter 11

                                   Debtor.
-------------------------------------------------------X

## ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363 AND RULE 6004
## OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
## (A) AUTHORIZING THE DEBTOR TO SELL CERTAIN REAL PROPERTY
## LOCATED AT 844-862 ST ANNS AVENUE, BRONX, NY 10456
## FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES
## AND INTERESTS AND GRANTING RELATED RELIEF

Upon the motion, dated June 16, 2017 (the "*Motion*")[1] of God's Chariots to the Heavenly

Highway, the debtor and debtor in possession (the "*Debtor*"), for entry of an order, pursuant to

11 U.S.C. §§ 105(a) and 363, Rule 6004 of the Federal Rules of Bankruptcy Procedure, and

pursuant to the amended guidelines for the conduct of asset sales adopted by this Court's General

Order M-383, authorizing the sale of commercial real property located at 8554 S. Lavergne Ave,

Burbank, IL 60459 (the "*Property*") free and clear of all liens, claims, encumbrances and

interests (if any); and the Court having considered (i) the Motion, (ii) the arguments of counsel

made, and the evidence submitted, proffered or adduced, at the hearing held on July 18, 2017

(the "*Sale Hearing*"), and (iii) the record in this Case, of which the Court took judicial notice at

the Sale Hearing; and the Court having determined that the relief requested in the Motion and the

Sale to the Buyer in accordance with the Purchase Agreement and the provisions of this order

(this "*Order*") are in the best interests of the Debtor, its estate, its creditors and other parties in

---

[1] Capitalized term not otherwise defined herein shall have the meaning ascribed to it in the
Motion.

interest; and it appearing that reasonable and adequate notice of the Motion has been provided to

all persons required to be served in accordance with the Bankruptcy Code, the Bankruptcy Rules

and the local rules and orders of this Court; and upon the record herein; and after due

deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

A.     The Court has jurisdiction over this matter and over the property of the Debtor,

including the Property to be sold, transferred and conveyed, pursuant to 28 U.S.C. §§ 157(a) and

1334(b) and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District

Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.), as

amended by order M-431 dated January 31, 2012 (Preska, C.P.J.).

B.     The statutory predicates for the relief sought in the Motion and the basis for the

approvals and authorizations herein are 11 U.S.C. §§ 105 and 363 and Rules 2002 and 6004 of

the Federal Rules of Bankruptcy Procedure.

C.     As evidenced by the affidavits of service previously filed with the Court, and

based on the representations of counsel at the Sale Hearing: (i) due, proper, timely, adequate and

sufficient notice of the Motion, the hearing thereon, and sale contemplated therein and herein

have been provided; (ii) such notice was good and sufficient and appropriate with respect to the

relief granted herein under the particular circumstances; and (iii) no other or further notice of or a

hearing on the Motion or the sale contemplated herein, is or shall be required.

D.     The Debtor is the sole lawful owner of the Property, and, upon entry of this Order,

has the legal power and authority to convey all of its right, title and interest therein and thereto.

E.     The relief requested in the Motion and at the hearing and granted herein is in the

best interests of the Debtor, its creditors, its estate and all other parties in interest in this case.

F.      All findings of fact and conclusions of law made or announced by the Court at the Sale Hearing are incorporated herein; and it is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The relief requested in the Motion is GRANTED in the manner and to the extent set forth below.

2.      Pursuant to Bankruptcy Code §§ 105(a), 363(b) and 363(f), the Purchase Agreement and the transaction contemplated therein are hereby approved and authorized.

3.      Pursuant to Bankruptcy Code § 363(b), the Debtor is hereby authorized to and directed to take any and all actions necessary or appropriate to convey the Property to the Buyer in accordance with, and subject to, the terms and conditions of the Purchase Agreement.

4.      The consideration provided by the Buyer for the Property under the Purchase Agreement is fair and reasonable, and shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

5.      Pursuant to Bankruptcy Code §§ 363(b) and 363(f), upon the closing of the sale contemplated in the Purchase Agreement, the Property shall be transferred to the Buyer free and clear of all liens, claims or encumbrances and such liens; existing claims or encumbrances (if any) shall attach to the proceeds of the sale.

6.      In the event of any inconsistency between this Order, on the one hand, and the Purchase Agreement or other documents related to the sale of the Property, on the other, the terms of this Order shall control.

7.      This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order and the Purchase Agreement in all respects.

8.      Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and

enforceable immediately upon entry.

Dated:  New York, New York
        July ___, 2017

_____
HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE